**REGULA et, Plaintiffs, v. GERBER, Defendant.**

Common Pleas, Tuscarawas County.

No. 27842. Decided November 4, 1946*

*—(No appeal taken.)

Charles T. Barkett, Dover, and Bowers, Stafford & Bowers, New Philadelphia, for plaintiffs.

C. W. Ferrell, New Philadelphia, for defendant.

## OPINION

By LAMNECK, J.

The plaintiffs in this case, doing business as a partnership, seek to recover the sum of $700.00 from the defendant which represents the balance of the purchase price of a secondhand 1940 Studebaker Commander 4-door automobile which the defendant purchased from the plaintiffs on June 3, 1946, for the sum of $760.00.

To this claim of the plaintiffs the defendant asks judgment against the plaintiffs for $86.30 representing a cash down payment on the car of $60.00, sales tax amounting to $22.80 and transfer fees of $3.50. The defendant claims that the plaintiffs impliedly warranted said automobile to be of quality and fitness for the particular purpose of transportation, and that said automobile was unfit for such purpose.

Both parties waived a trial by jury and the issue was submitted to the Court.

The evidence in this case discloses that the car in question was advertised for sale by the plaintiffs, the exact language of the advertisement not having been shown, but the advertisement included the description of the car as to make and model and that the price was within the O. P. A. ceiling; that in response to the advertisement the defendant called at the plaintiffs' place of business on June 3, 1946, and inquired about the car advertised; that he was shown the car by Lewis R. Regula, one of the partners, and was given a ride therein for several city blocks or about a quarter of a mile; that the said Lewis R. Regula after explaining to the defendant that there were two O. P. A. ceiling prices for a used car, viz. a low ceiling price and a high ceiling price, then told the defendant that the low ceiling price on this particular car was $760.00 and the high ceiling price was $910.00; that the said Lewis R. Regula then showed the defendant a printed book containing O. P. A. ceiling prices for automobiles and which included the prices quoted by him, and which also showed that a low ceiling price was a sale without warranty and that a high ceiling price included a warranty; that after some consideration the defendant said he would take the car for $760.00, which was accepted, and made a deposit of $60.00 in cash on the sale, plus the sales tax and transfer fees; that on the next day, June 4, 1946, the defendant returned and gave the plaintiffs a check for $700.00

and drove the car away; that after he had driven the car several miles on his way home and while going up a hill, it began to knock and continued to knock with increased intensity until he arrived home, a distance of ten miles; that the defendant shortly thereafter called an automobile mechanic who inspected the car and found that two connecting rod bearings were causing the knocking and that the car was entirely unfit to be used for transportation without being repaired; that said mechanic found a heavy grade of motor oil in the crankcase which he testified was of "50" or higher in grade; and that on June 5, 1946, the defendant stopped payment on the check and had the car towed to plaintiffs' place of business where he left the car and demanded the return of his down payment, which the plaintiffs refused.

It was not made clear from the evidence who has possession of the car at the present time.

The plaintiffs introduced evidence to show that one of their employes had greased and lubricated the car several days before the sale; that a 30 grade oil had been put in the crankcase; and that no other oil of a higher grade had been used by them on this particular car.

Under the provisions of §8443 GC, when title to goods "has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract of sale, the seller may maintain an action against him for the price of the goods."

Under §8449 GC, when there is a breach of warranty by the seller, the buyer may at his election rescind the sale by promptly returning the article purchased after discovering the breach of warranty and recover the consideration paid, or he may keep the article and recover damages by reason of the breach.

Under the provisions of Sec. 8395 GC there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) When the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(2) When the goods are bought by description from a seller who deals in goods of that description, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be of merchantable quality.

"(3.) If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed.

"(4.) In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose.

"(5.) An implied warranty or condition as to quality or fitness for a particular purpose may be annexed by the usage of trade.

"(6.) An express warranty or condition does not negative a warranty or condition implied under this chapter unless inconsistent therewith."

Under these statutes, which are a part of the Uniform Sales Act which originally became effective on May 9, 1908, if the car in question in this case was sold without an implied warranty, then the plaintiffs are entitled to a judgment of $700.00.

If there was an implied warranty that the car was of "sufficient quality and fitness for the purpose of transportation," then the defendant is entitled to a judgment for $82.80, because the evidence clearly discloses that the car was not fit for transportation, and that the defendant promptly attempted to rescind the contract of sale.

At common law the general rule is that there is no warranty implied by law on the part of the seller with respect to an article sold under the doctrine expressed in the maxim "caveat emptor"—let the buyer beware—, unless there was fraud on the part of the seller inducing the sale.

In Bayer v Winton Motor Car Co., 194 Mich. 222, 160 N. W. 642, an action by the purchaser of a secondhand automobile to recover from the seller the money claimed to have been expended by him, without any value received, for the purchase price of the car, and expenses incurred in connection therewith, the Court held there was no implied warranty in the purchase of a secondhand automobile.

There is nothing in the Uniform Sales Act, §§8381 to 8456, inclusive, GC, declaring there is no implied warranty in the sale of secondhand chattels. It is specifically provided in §8395 GC that there is no implied warranty or condition as to quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except (then this general statement is followed by several exceptions).

It is therefore quite clear that the legislature intended this section to apply to all sales of goods, whether new or secondhand, which would include the sale of secondhand automobiles.

It is also clear from the language used in §8395 **GC** that the "goods supplied under a contract to sell or sale" must be for "some particular purpose" as distinguished from a "general purpose". The defendant's claim that he purchased the automobile for transportation could only be construed that it was purchased for a "general purpose" rather than a "particular purpose" and hence §8395 **GC** does not apply to the instant case. (See **Meyer v Packard Co., 106 Oh St 328,** 140 N. E. 118.)

It can be assumed in this case that when the plaintiffs sold the automobile to the defendant at the low O. P. A. ceiling price without warranty, that it was the same as a sale "as is". "As is" sales generally exclude implied warranties. (46 Amer. Jur. 501, Sales Sec. 319.) Thus when one buys secondhand or used property "as is" without warranty, he is put upon notice that he is buying the property at his own risk and he should acquaint himself with the whole situation, and is not entitled to a rescission except for fraud, imposition, or for other like reasons. (White Co. v Bacherig, 9 Tenn. 501.)

It has also generally held that there is no implied warranty of quality or fitness in the sale of secondhand automobiles, especially where the buyer has had an opportunity to inspect, and that the doctrine of caveat emptor applies. (Moore v Switzer, 78 Col. 63, 239 Pa. 874; Williams v McClain, 180 Miss. 6, 176 So. 717; Henry v Kennard, 178 Okla. 368, 62 Pa. (2d) 1184; Lamb v Otto, 51 Cal. App. 433, 197 Pac. 147.)

As above indicated the general rule, except under conditions where the Uniform Sales Act applies, is that there is no implied warranty of quality, condition, or fitness of secondhand goods where the buyer has inspected, or has had an opportunity to inspect, the goods purchased.

In inspecting a secondhand article a purchaser cannot expect a warranty to be implied against defects which are obvious, or of which the purchaser is notified. Neither can he be expected to be protected against latent defects that may exist in a secondhand article. But after inspecting a secondhand article before sale, he is still misled, either through fraud, misrepresentation, deceit, or imposition, respecting the character, extent or probable consequence of a defect of which he had no notice, should not a warranty be implied? (See Markman v Hallbeck, 206 Ill. App. 465.)

In Blashfield's Cyclopedia of Automobile Law under Sec. 4501, it is stated that "with respect to a present executed sale of an automobile by a dealer, not the manufacturer, with opportunity for examination and inspection, courts have applied the general rules that there is no implied warranty against defects, in the absence of fraud of the seller, unless defects therein are latent and the seller knew the buyer did not rely

on his own judgment in accepting the car but on that of the seller who knew or might have known the existence of the defects."

In 46 Amer. Jur., on Page 284, Sec. 95, the following is stated as the law: "The rule that fraud cannot be predicated upon mere silence or failure to disclose known facts when the party having knowledge of such facts is under no duty to speak does not justify resort to active deceit or fraud, and hence does not apply when one in addition to nondisclosure of material facts uses any artifice, wile, or deceptive conduct designed to throw the other party off his guard and lull him into a false security. Accordingly even though there may be no duty upon a seller to disclose certain material facts to a prospective buyer, yet if in addition to such nondisclosure, the seller resorts to wiles or artifices designed to conceal the actual condition of or defects in the subject matter of the sale, the buyer may base a charge of fraud thereon. Notwithstanding property is expressly sold subject to all defects, if the seller resorts to artifices to conceal defects of which he has knowledge, a charge of fraud may be sustained. The acts which will approximate such artifices or deceit are not capable of precise definition; any words, statements, acts, or even silence, designed to mislead and deceive a purchaser, may properly fall within this category. Fraud in such a case may be effected by an evasive or tricky answer, or by false statements made by a seller to divert the attention of the buyer by allaying any suspicion which the appearance of the property might excite."

In the instant case the plaintiffs advertised the automobile for sale and the defendant agreed to pay a substantial price. The defendant had a right to assume that it was an automobile in running condition, even though there could be no implied warranty as to the length of time it would remain in a running condition. He rode in the car on a demonstration by the plaintiffs and discovered that it was not knocking. His precautions to discover obvious defects were diligent in view of the fact that he had not previously owned an automobile.

There is no doubt in the mind of the Court that the defect in the connecting rod bearings was in existence at the time of the sale and that this defect only became apparent after the heavy motor oil in the crankcase became warm. This first came to the defendant's attention after he had driven the car a distance of only five miles on his way home immediately after the purchase was completed. The Court believes from the evidence that the car was not in running condition at the time of the sale and was utterly useless for transportation at

the time of the sale. It could not be used for transportation without repairs first being made.

The Court does imply that the plaintiffs actually misrepresented the car to the defendant or were guilty of intentional fraud. Perhaps they were not aware of the actual condition of the car as the evidence shows they only had owned it for a short period of time and had done no repair work upon it. They had not driven it more than a mile or two at a time, which possibly was not long enough for heavy motor oil to warm up to disclose the defect in existence. But being in the business of selling used automobiles, they should have known of the defect that existed in the car involved in this action.

The fact remains that the defendant purchased an automobile utterly unfit for transportation for a substantial price after it was advertised for sale, and that its defects were hidden by the presence of extraordinary heavy oil in the crankcase not generally used for lubricating automobile crankcases. The evidence also discloses that the defendant rescinded the sale immediately after discovering such defects. Under such circumstances, fair dealing demands that an implied warranty be held to exist.

While it may be claimed that this is a substantial modification of the old doctrine of "caveat emptor", let the buyer beware, the Court agrees with the comment made by the late Judge Wanamaker in **Meyer v Packard Co., 106 Oh St 338** as follows: "Is it not high time, however, that that doctrine should be somewhat modified; at least that it should have no higher place in the business life of a nation than the companion doctrine, 'let the seller beware.'

"There is entirely too much disregard of law and truth in the business, social and political world of today. I am using this term in its broad sense. Constitutions, statutes, sound legal and ethical principles are becoming little more than mere scraps of paper, not only between individuals, but among states and nations.

"It is time to hold men to their primary engagements to tell the truth and observe the law of common honesty and fair dealing. Such a change, in my judgment, would not be so much in the line of revolution as in the line of reasonable reform. Honest men need not fear it; dishonest men should be kept in fear of it."

From all the circumstances in this case the Court finds

that an imposition was practiced on the defendant in the sale of the automobile and that he is entitled to a rescission of the contract.

Judgment accordingly.

Exceptions.