**LEXINGTON MACK, INC., and Mack Financial Corporation, Appellants,**

v.

**Sam MILLER, Appellee.**

Supreme Court of Kentucky.

June 10, 1977.

Rehearing Denied Oct. 7, 1977.

Joseph M. Scott, Jr., Stoll, Keenon & Park, Lexington, for appellants.

Marcus Mann, Mann & Turner, Walter Turner, Salyersville, for appellee.

**250**

JONES, Justice.

This appeal involves the sale of a 1972 Mack dump truck by Lexington Mack, Inc. to Sam Miller. The motive for the purchase of a new truck by Miller was to trade in a 1971 Mack truck, which due to its size and weight, was illegal on the highways of this Commonwealth.

The trial court ruled that Miller suffered loss of use of the 1971 Mack trade-in truck from August 18, 1972, until December 18, 1972, in the amount of $4,756.50. The trial court also held that Miller was entitled to the fair value of the 1971 trade-in truck in the amount of $8,356.26. Lexington Mack, Inc., and Mack Financial Corporation prosecute this appeal. The thrust of their argument is that the Uniform Commercial Code is the law applicable to the facts of this case.

In the late summer of 1972 Sam Miller experienced overweight problems with his 1971 Mack truck. The 1971 truck weighed 76,000 pounds. When loaded with 24 tons of coal the gross weight was 124,000 pounds. That was far in excess of the legal limits of 30,000 pounds on Magoffin County roads. As a result of a number of citations for overweight, Miller decided to trade the 1971 Mack truck for a new, smaller 1972 Mack truck which he could operate legally on Kentucky highways. He contacted Lexington Mack, Inc., with whom he had previously dealt, about a trade-in. A salesman for Lexington Mack, Inc. informed Miller that he would have to bring the payments on the 1971 truck up-to-date or it would not be accepted in trade. Miller owed Mack Financial Corporation a total of 12 payments in the amount of $1,182.16 each. He then wrote a check to Mack Financial Corporation for the past due installment and negotiations were continued.

The trade-in and sale were consummated on August 18, 1972. At that time Miller executed a promissory note and security agreement. He was given credit for his 1971 trade-in and then agreed to pay to Lexington Mack a balance of $30,051.60. This sum was to be paid in monthly installments of $981.72 commencing on October 1, 1972. Miller also executed a financing statement and an off-road affidavit. Three days later, an employee of Lexington Mack testified that he mailed to the Magoffin County Court Clerk the bill of sale, manufacturer's certificate of origin, financing statement, off-road affidavit and a check for $6.35, the amount required for registration and recording its lien. The county clerk testified he never received the check and the documents. Employees of Lexington Mack testified that neither the check nor the documents were returned to them. On August 18, 1972, an employee of Lexington Mack drove the 1972 Mack truck to Magoffin County, where Miller accepted delivery and signed the documents. He began using the truck to haul coal on a number of jobs within the county. In a period of three months Miller had either driven or had the 1972 Mack truck driven approximately 2,000 miles. However, during that period the 1972 truck was not used for a period of approximately five weeks. This was due to lack of work in the county, local disputes over damage to roads by overweight coal trucks, and the collapse of a bridge. Miller could not use the 1972 truck outside Magoffin County because the temporary license tags had expired and the truck was not properly licensed. Miller did, however, borrow some license tags from a friend and continued to use the truck in Magoffin County.

Late in October, through its analysis of delinquent accounts, Lexington Mack discovered that Miller had not made any payments on the 1972 truck. Lexington Mack had been notified earlier by Mack Financial Corporation that Miller's check in the amount of $1,182.16 had been returned for insufficient funds and that Lexington Mack would be required to pay that amount. When Miller was contacted by Lexington Mack he acknowledged his default and refused to make any payments. His excuse for failure to make the payments was that he had not received title papers to the truck. He also contended that the $1,182.16 check was to have been included in the $30,051.60 pay-off figure. This was the

first notice Lexington Mack had that the title documents were not received by the Magoffin County Court Clerk.

When Miller refused to relinquish possession of the 1972 Mack truck, Lexington Mack filed suit. It obtained an order of delivery and repossessed the truck. After timely notice Lexington Mack sold the 1972 truck leaving considerable deficiency owed to Lexington Mack. Miller counter-claimed for the value of his 1971 truck plus his lost profits during the period he was deprived of its use.

■ Lexington Mack argues that the sale of a motor vehicle and the rights and duties of the parties to such a sale are governed by the Uniform Commercial Code Sales Article, KRS Ch. 355.2. This court agrees, and has so held in *Hicks v. Kentucky Farm Bureau Mutual Insurance Co.*, Ky., 455 S.W.2d 452 (1970). KRS 355.2–401(2) provides that:

"Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of the security interest and even though a document of title is to be delivered at a different time or place
* * *"

Thus the sale occurred and title passed to Miller at the time of delivery. Miller did not reject the truck, but used it to haul coal. KRS 355.2–606 provides that acceptance occurs when the buyer "fails to make an effective rejection" or "does any act inconsistent with the seller's ownership". Having accepted the truck, Miller became obligated to pay the contract price. KRS 355.-2–607(1). At no time thereafter did Miller attempt to revoke his acceptance of the truck pursuant to KRS 355.2–608. On the contrary, Miller refused to deliver possession of the truck to Lexington Mack, stating that only a court order could force him to do so.

■ Miller contends that, because the Magoffin County Court Clerk never received the title documents from Lexington Mack as required by KRS §§ 186.190 and 186.200, he could not get the 1972 truck licensed and therefore could not use it. Citing *Harlow v. Dick,* Ky., 245 S.W.2d 616 (1952), Miller argues that his inability to get the truck licensed constituted a failure of consideration sufficient to warrant recision of the contract. KRS § 186.190 and KRS § 186.200 prohibit the sale or transfer of a motor vehicle without the simultaneous delivery of copies of the bill of sale to the County Court Clerk. These statutes are revenue measures designed to insure the payment of the motor vehicle usage tax at the time of registration. *Siler v. Williford,* Ky., 350 S.W.2d 704 (1961). They are entirely separate and distinct from the provisions of the Uniform Commercial Code governing sales. KRS Ch. 355.2.

■ In *Harlow v. Dick,* this court held that:

"If the purchaser did all that he reasonably could to obtain these (title) papers and was denied them, . . . in our opinion he proved a failure of consideration and was entitled to rescind the contract or recover damages for its breach."

The facts in this case are distinguishable. The record clearly demonstrates that Miller had consistently failed to register and license his trucks when title papers were provided. Further, Miller was able to and did operate his truck in Magoffin County regardless of his ability to get the truck properly licensed. Whether the non-delivery of title papers under these circumstances constitutes a failure of consideration entitling Miller to rescind the contract, however, is a question we do not have to reach. The Harlow case was decided before the enactment of the Uniform Commercial Code. Article II of the Code provides the manner in which a contract for the sale of motor vehicles may be rescinded. Miller did not revoke his acceptance of the truck nor did he attempt to exercise any of the buyer's remedies provided under the Code. Miller's failure to make any payments toward the purchase of the truck constituted an unjustifiable breach entitling Lexington Mack to the full remedies provided by the

Code and its security agreement. Having validly exercised these rights, Lexington Mack, Inc., and Mack Financial Corporation are entitled to recover from Miller those amounts owed them.

This court is of the opinion that the trial court's findings of fact and conclusions of law are clearly erroneous.

The judgment is reversed for further proceedings consistent with this opinion.

All concur.