David **HERBERT, et al.,**
**Plaintiffs–Respondents,**

v.

Jerry D. **HARL, et al.,**
**Defendants–Appellants.**

No. 69894.

Supreme Court of Missouri,
En Banc.

Sept. 13, 1988.

Rehearing Denied Oct. 18, 1988.

---

Gary Stamper, Richard C. Thomas, Columbia, for defendants-appellants.

William L. Orr, Columbia, for plaintiffs-respondents.

WELLIVER, Judge.

Respondents, sellers, sued appellants, buyers, for the amount due on a purchase of a used automobile. Appellants Jerry D. Harl and step-son Steve Williamson had attempted to rescind the purchase. In a bench trial the court found for respondents, David Herbert and his father Ray Herbert on their petition to recover the purchase price. The Court of Appeals, Western District, held that the individual sale of a used automobile is controlled by the Uniform Commercial Code [1] (UCC) and reversed the trial court. We transferred the case to examine the question of whether the UCC controls individual sales of used automobiles. We decide as on original appeal. Mo. Const. art. V, § 10. We believe that the Court of Appeals correctly ruled that the UCC is applicable and erroneously ruled that the cause should be reversed. We affirm the trial court.

---

1. Chapter 400, RSMo 1986.

# I

## FACTS

Respondents advertised a used Triumph automobile for sale in July 1985. Appellant step-father contacted respondent son to inquire about the automobile. He inspected it and drove it several miles. Respondents were asking $2700 for the Triumph. One week later, appellant step-father called respondent to set up a time for his step-son, to see the automobile. Appellant step-son took the automobile to a body shop where he had it inspected for evidence of previous collisions or other damage. The mechanic listened to the engine and made a visual inspection of the engine and the interior of the automobile. After appellant step-son drove it, the parties negotiated and agreed on a reduced price of $2200.

A few days later, on July 28, 1985, appellants gave respondents $500 in cash and a check for $1700. The following morning, respondent son accompanied appellant step-son to a bank and signed the certificate of ownership in the presence of a notary, who notarized the certificate of ownership. Appellant step-son took possession of the title and of the automobile. That same evening, appellants called respondent father to ask for an adjustment to the price because the Triumph was not running well. Appellants stated that it was their position that the engine in the automobile was "worn out," and that respondents should lower the price of the automobile or split the cost of the necessary repairs. Respondent father refused to renegotiate the sale.

Approximately two days after appellant step-son had taken possession of the Triumph, he took it to another mechanic to have the engine checked. He had driven the car on a trip and said that the engine began smoking and losing power. The mechanic who made this inspection of the Triumph testified that the car was "run down." He estimated that repair work for the engine would cost $1200 to $2000.

On August 1, 1985, appellants parked the Triumph on the street in front of respondents' house with the keys locked inside. They left an envelope, addressed to respondents and visible through the window, on the front seat of the automobile. They placed the certificate of ownership in an envelope in respondents' mailbox. The signatures on the certificate of ownership had been removed, but the notary public's seal remained visible and intact.

Respondents were out of town when the automobile was parked in front of their house, and they did not return until two weeks later. The automobile remained parked on the street in front of respondents' house. Appellants did not attempt to contact respondents further by telephone or correspondence. When respondent father received notice from the city that the automobile would be towed if it were not moved, he forwarded the notice to appellants' attorney. Neither of the parties moved the vehicle and the city towed it away in April 1986.

Appellants' sole point on appeal assigns error to the trial court for failing to give consideration in its order to respondents' alleged duty to mitigate their damages by attempting to resell the automobile after they returned it to them. Respondents argue that the principle of mitigation of damages has no application when the motor vehicle and the certificate of ownership have been delivered to and accepted by the buyer and there has been no rescission or revocation of the transaction.

# II

## STANDARD OF REVIEW

Review is governed by Rule 73.01(c) and *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). The judgment must be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. The credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of their testimony. *Trenton Trust Co. v. Western Sur. Co.*, 599 S.W.2d 481, 483 (Mo.banc 1980); *Paramount Sales Co., Inc. v. Stark*, 690 S.W.2d 500, 501 (Mo.App.1985);

*Estate of Graves,* 684 S.W.2d 925, 926 (Mo. App.1985).

## III

## UNIFORM COMMERCIAL CODE

■ The issue is whether the sale of a used automobile is controlled by the UCC, as adopted by this state. "Unless the context otherwise requires, this article applies to transactions in *goods....*" § 400.2–102 (emphasis added).[2] Therefore, whether a particular transaction is governed by Article 2 of the UCC depends on whether the subject matter of the transaction is within the UCC definition of "goods." " 'Goods' means all things ... which are movable at the time of identification to the contract for sale...." § 400.2–105(1).

A majority of states have held that the sale of a motor vehicle is a sale of "goods" that is governed by UCC Article 2. *Lexington Mack, Inc. v. Miller,* 555 S.W.2d 249, 251 (Ky.1977); *Peckham v. Larsen Chevrolet–Buick–Oldsmobile, Inc.,* 99 Idaho 675, 587 P.2d 816 (1978); *Gillespie v. American Motors Corp.,* 51 N.C.App. 535, 277 S.E.2d 100 (1981); *Park County Implement Co. v. Craig,* 397 P.2d 800 (Wyo. 1963); Annotation, *What Constitutes "Goods" Within the Scope of UCC Article 2,* 4 A.L.R.4th 912 (1981); 67 Am.Jur.2d *Sales* § 62 (1985).

One Missouri court has touched on this subject. *Worthey v. Specialty Foam Products, Inc.,* 591 S.W.2d 145 (Mo.App. 1979). The case involved the sale of a used truck by a commercial dealer. The court there commented:

> In 1963 Missouri adopted the Uniform Commercial Code, including Article 2 on Sales. The Code calls for a liberal construction of its terms and seeks, inter alia, uniformity in commercial transac-

tions among the various jurisdictions [§ 400.1–102]. It makes substantial changes in the law of sales, and seeks to revise and modernize the law of sales as it existed under the Uniform Sales Act.[3] [Comments, § 400.2–101].

*Id.* at 148 (footnote in original). Without further discussion, the court held that the commercial sale was governed by the UCC which supplanted our prior law of sales.[4]

The sale of automobiles, commercial or individual, respects neither state nor national borders. We know of no reason why the UCC should not apply to the individual sale as well as to the commercial sale of used automobiles.

## IV

## IMPLIED WARRANTY

■ Section 400.2–314(1) provides, "Unless excluded or modified (section 400.2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale *if* the seller is a *merchant* with respect to goods of that kind." (Emphasis added.) A "merchant" is defined as: "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction...." Section 400.2–104(1).

The facts of this case are similar to the facts in *Guess v. Lorenz,* 612 S.W.2d 831 (Mo.App.1981). The court there held that because the seller was not a merchant, there could be no implied warranty of merchantability. *Id.* at 834. "Implied warranties of merchantability apply only to 'merchants' of goods in question by the terms of § 400.2–314(1). The appellant in this case was clearly not a 'merchant' of used cars.[5]" *Id. See* Annotation, *Who is "Mer-*

---

**2.** All references are to RSMo 1986 unless otherwise indicated.

**3.** The Uniform Sales Act created various implied warranties that were held applicable to the sale of used cars. *Wallower v. Elder,* 126 Colo. 109, 247 P.2d 682 (1952); *Regula v. Gerber,* Com.Pl., 70 N.E.2d 662, 34 Ohio Op. 206 (1946). As stated in *Natale v. Martin Volkswagen, Inc.,* 92 Misc.2d 1046, 402 N.Y.S.2d 156 (1978), "The Uniform Sales Act, which was replaced by the

Uniform Commercial Code, was interpreted by courts to apply to second-hand goods."

**4.** *See* A. Spradling, Jr. and W. Welliver, *Introduction to the Uniform Commercial Code,* 29 J. Mo. Bar 172 (1964), *reprinted in* 20A V.A.M.S. at VII (1965).

**5.** Official Comment 3, § 400.2–314, V.A.M.S.:
A contract for the sale of second hand goods, however, involves only such obligation as is

chant" *Under UCC § 2–314(1) Dealing with Implied Warranties of Merchantability,* 91 A.L.R.3d 876 (1979).

This being a sale between individuals, the UCC does not permit appellants to base their action on the implied warranty of merchantability provided by § 400.2–314(1).

## V

## REVOCATION

### A

■ The UCC permits a buyer to revoke [6] his acceptance of goods for nonconformity.[7] The buyer must show that: (1) the goods do not conform; (2) the nonconformity substantially impairs the value of the goods to the buyer; and (3) if the buyer did not know of the nonconformity when he accepted, his acceptance was reasonably induced by the difficulty of discovering the nonconformity before acceptance. § 400.2–608(1); 67A Am.Jur.2d *Sales* § 1192 (1985). Appellant step-father inspected the automobile before his step-son saw it. Both appellant step-father and appellant step-son drove the automobile several miles and appellant step-son took it to a body shop where he had it inspected for evidence of previous collisions and engine operation. All of this occurred before appellant step-son purchased the car. Having so satisfied themselves as to the condition of the car, appellants negotiated a $500 reduction in the sale price of the car. We find no substantial evidence to prove entitlement to the revocation provided by § 400.2–608.

### B

■ Assuming for the sake of argument that it could be said that appellants proved a right to revocation pursuant to § 400.2–608, there still remains the obligation to comply with the state's motor vehicle and licensing statutes in revoking the acceptance. Section 301.210.1 provides:

> In the event of a sale or transfer of ownership of a motor vehicle ... for which a certificate of ownership has been issued, the holder of such certificate shall endorse on the same an assignment thereof ... and prescribed by the director of revenue ... and deliver the same to the buyer at the time of the delivery to him of said motor vehicle....

Section 301.210.1. The statutory provisions as to the assignment of the certificate of ownership to a motor vehicle upon the sale or transfer of the vehicle are absolute and mandatory and are rigidly enforced by the courts of this state and ownership does not pass without adherence to such provisions. 7A Am.Jur.2d *Automobiles and Highway Traffic* § 31 (1980); *Kelso v. Kelso,* 306 S.W.2d 534, 539 (Mo.1957). Respondent son signed the certificate of ownership as registered owner and it was duly acknowledged before a qualified notary public. Appellant step-son had ownership of the automobile when possession of the car and the certificate of ownership were assigned and delivered to him.

It was two days after the sale of the car when appellants attempted revocation of their acceptance of the car and certificate of ownership. Instead of tendering a properly executed and notarized reassignment of the certificate, they apparently erased or in some manner eradicated the signatures

---

appropriate to such goods for that is their contract description. *A person making an isolated sale of goods is not a "merchant" within the meaning of the full scope of this section and, thus, no warranty of merchantability would apply.* (Emphasis added.)

**6. 400.2–608 Revocation of acceptance in whole or in part—**
    (1) The buyer may revoke his acceptance of a lot ... whose nonconformity substantially impairs its value to him if he has accepted it....

(b) without discovery of such nonconformity if his acceptance was reasonably induced ... by the difficulty of discovery before acceptance....
Section 400.2–105(5) defines "lot" to mean a single article which is the subject matter of a separate sale.

**7.** This case involves the sale of a used automobile. Therefore, § 407.560 to 407.579 (under the heading "New Motor Vehicle Warranties, Nonconformity (Lemon Law)" applying to the sale of new motor vehicles (as defined therein) do not apply to this case.

of respondent and the notary, leaving the unerasable and clearly visable notary seal on the certificate.

There are no provisions in the statutes allowing a retransfer of ownership by erasing or defacing the signatures on a certificate of ownership already delivered. Section 301.440 makes it unlawful to violate § 301.210. To be a valid assignment within the meaning of the statute, the form prescribed by the director of revenue and found on the reverse side of the certificate of ownership, must be completed, signed by the owner, and duly acknowledged before a qualified notary public and delivered to the transferee. *Case v. Universal Underwriters Ins. Co.*, 534 S.W.2d 635, 638 (Mo.App. 1976). Strict technical compliance with § 301.210.1 is required. *Tinger v. Tinger,* 709 S.W.2d 123, 124 (Mo.App.1986).

The manner by which appellants sought to tender reassignment of the certificate of ownership shows a total disregard of the motor vehicle registration laws of this state which would render the attempted revocation ineffective.

The judgment of the trial court should be affirmed for the reasons set forth.

AFFIRMED.

All concur.