Emily SHIVERS, Plaintiff–Appellant,

v.

Cleze L. CARR, d/b/a Cat Eye Auto Sales, Defendant–Respondent.

No. 27691.

Missouri Court of Appeals,
Southern District,
Division II.

April 17, 2007.

Greggory D. Groves, Lowther Johnson, Springfield, MO, for Appellant.

Gary W. Allman, Allman Ingrum & Wilson, P.C., Hollister, MO, for Respondent.

GARY W. LYNCH, Judge.

Plaintiff–Appellant Emily Shivers appeals the judgment of the trial court denying her claim for rescission of her purchase of an automobile from Defendant–Respondent Cleze L. Carr. We affirm.

## 1) *Facts*

In April of 2003, Carr purchased a 1998 Mercedes–Benz ML320 from an auto auction held in Branson, Missouri, for $17,490. The seller assigned to Carr the original Illinois title to the vehicle. Shivers, who worked at the auction at the time, was also present and had joked with Carr about buying the vehicle for her.

Shivers later purchased the vehicle from Carr in October of 2003. She paid Carr $10,500 in cash for the vehicle and traded a 1995 Mitsubishi, which Shivers valued at $7,000. As part of the transaction, Carr re-assigned the Illinois title of the vehicle over to Shivers. No Missouri certificate of ownership passed hands, and from the facts adduced at trial, it appears that neither party ever obtained one.

About one week after the purchase, Shivers noticed that the air conditioning in the vehicle was not working properly, and the oil light was on. She subsequently took the vehicle to a Mercedes dealership where she was told that the shifting column had been completely rebuilt. Other than filling up the oil, she had no other work done on the vehicle at that time.

On December 23, 2004, Shivers brought the vehicle in to be inspected in anticipation of registering it in her name in Missouri and having it licensed. The vehicle failed inspection due to bad tie rods. On December 28, 2004, the vehicle had repairs done on its tie rods totaling $367.77. However, Shivers did not then attempt to have the vehicle licensed and registered.

At some time after having the tie rods repaired, Shivers decided to trade the vehicle for another. She took it to Springfield Lincoln–Mercury, a car dealership. While the vehicle's value was being assessed by the dealership, one of the dealership's employees, James Hathcock, discovered that the vehicle had been salvaged in Arizona and had a salvaged title from that state before being titled in Illinois. Shivers then called Carr to ask if he knew the car had been salvaged. Carr claimed he had not known and that had he known, he would not have sold the vehicle to Shivers.

Shivers used the vehicle for personal use and for her real estate business and has put about 30,000 miles on the Mercedes

since purchasing it. Neither party knew of the Mercedes' history or condition.

At all relevant times, both Carr and Shivers were residents of Missouri, and all actions taken by Carr and Shivers relative to the vehicle occurred in Missouri. Carr was not licensed in Missouri as a motor vehicle dealer at any relevant time.

Shivers brought suit against Carr on February 15, 2005, in four counts, the last of which was a claim for rescission of the underlying contract due to mutual mistake. On March 23, 2006, the trial court entered a judgment against Shivers on her rescission claim. Shivers appealed this denial.

### 2) *Claim for Rescission and Missouri's Motor Vehicle Statutes*

#### a) *Standard of Review*

The judgment of the trial court will be sustained unless it is against the weight of the evidence, unless there is no substantial evidence to support it, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). However, in cases where the facts are not in dispute, appellate review is de novo. *Smith v. State of Missouri*, 152 S.W.3d 275, 277 (Mo. banc 2005). Both parties agree here that there are no disputes as to the facts.

#### b) *Analysis*

Under Missouri law, proper transfer of ownership of a vehicle requires an assignment of the certificate of ownership to the purchaser. § 301.210 [1]; *Herbert v. Harl*, 757 S.W.2d 585, 590 (Mo.1988). Section 301.210.1 provides that:

[i]n the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued, the holder of such certifi-

cate shall endorse on the same an assignment thereof, with warranty of title in form printed thereon ... with a statement of all liens or encumbrances on such motor vehicle or trailer[.]

Section 301.210.4 further provides that: [i]t shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as provided in this section, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void.

■ Purchasers of used automobiles who are not dealers are required by § 301.210.2 to present to the director of revenue the certificate of ownership assigned to them and to obtain a new certificate. *State Farm Mut. Auto. Ins. Co. v. M.F.A. Mut. Ins. Co.*, 485 S.W.2d 397, 400 (Mo. banc 1972); *Pearl v. Interstate Sec. Co.*, 357 Mo. 160, 206 S.W.2d 975, 978 (1947). Carr was not a dealer. Thus, when Carr purchased the vehicle and received the Illinois certificate of title assigned to him by the Illinois owner, Carr was required to obtain a Missouri certificate of ownership in his name from the director of revenue. § 301.210.2; *State Farm Mut. Auto. Ins. Co.*, 485 S.W.2d at 400; *Pearl*, 206 S.W.2d at 978. Instead, in contravention of the mandates of § 301.210.2 and § 301.210.4, Carr and Shivers attempted to unlawfully effect the transfer of the vehicle to Shivers by Carr's re-assignment of the Illinois certificate of ownership. *Id.*

■ Missouri case law is clear that the certificate of ownership provisions of

---

**1.** All references to statutes are to RSMo 2000, unless otherwise noted.

§ 301.210 are absolute and mandatory and must be rigidly enforced. *Herbert,* 757 S.W.2d at 589. Failure to comply with the requirements of § 301.210 results in a void and fraudulent sale, and ownership does not pass. § 301.210; *Herbert,* 757 S.W.2d at 589. Our Supreme Court has stated that § 301.210 is:

> a special statute, a police regulation "of the highest type" with which "absolute technical compliance" is required, the provisions of which are "rigidly enforced" and as to which there are "no exceptions to conform to intentions." The statute is "drastic, mandatory, and intended as a police regulation in the interest of the public welfare to prevent traffic in stolen automobiles," "to aid in the apprehension of criminals, and to protect the innocent and guileless from the machinations and wiles of the wicked." [Internal citations omitted.]

*State v. Glenn,* 423 S.W.2d 770, 774 (Mo. 1968).

■ In the case at bar, as a result of Carr's non-compliance with § 301.210.2, the re-assigned Illinois title was not, as required by § 301.210.4, "such [certificate] of ownership with an assignment thereof, as *provided in this section.*" § 301.210.4 (emphasis added). Thus, the attempted sale by Carr and purchase by Shivers of the vehicle by the re-assignment of the Illinois certificate of ownership, which was not the certificate of ownership provided by § 301.210, was unlawful under § 301.210.4. The explicit provisions of that section also rendered it fraudulent and void. § 301.210; *Herbert,* 757 S.W.2d at 589.

■ Shivers asserts that the contract for the sale of the vehicle should be re-scinded due to mutual mistake of fact—the vehicle had been salvaged. However, re-scission is only available provided that there is a voidable but existing contract.[2] *Matthews v. Truxan Parts, Inc.,* 327 S.W.2d 28, 37 (Mo.App.1959). Because no Missouri certificate of ownership ever changed hands between Carr and Shivers, the agreement between them for the purchase of the vehicle was not voidable, but rather, was fraudulent and void under § 301.210.4. For this reason, rescission is not an available remedy for Shivers. *Id.* Even so, Shivers is not without a potential remedy.

■ "Where parties enter into an agreement in violation of the law, they will as a general rule be left in the position in which they put themselves." *Lebcowitz v. Simms,* 300 S.W.2d 827, 830 (Mo.App. 1957). Nevertheless, Missouri cases have recognized the remedy of repudiation and allowed plaintiffs to repudiate purported contracts in cases where § 301.210 was not followed, despite the fact that the purported contracts were void. *Greer v. Zurich Ins. Co.,* 441 S.W.2d 15, 25–26 (Mo.1969); *Cantrell v. Sheppard,* 247 S.W.2d 872, 875 (Mo.App.1952). Repudiation is premised upon the legal fiction that an executory contract existed between the parties until the certificate of title was delivered. *Smith v. G.F.C. Corp.,* 255 S.W.2d 69, 70 (Mo.App.1953). However, in order to exercise the remedy of repudiation, the purchaser is required to return the automobile in as good a condition as it was when it was received. *Hymer v. Dude Hinton Pontiac, Inc.,* 332 S.W.2d 467, 469 (Mo. App.1960); *Albright v. Uhlig,* 315 S.W.2d 471, 475 (Mo.App.1958); *Lebcowitz,* 300 S.W.2d at 830; *G.F.C. Corp.,* 255 S.W.2d at 70–71.

---

**2.** We note that if a valid, but voidable, contract had been formed in this instance, the proper analysis would be under Missouri's Uniform Commercial Code, at § 400.1–101, *et seq. Herbert,* 757 S.W.2d at 588.

In *G.F.C. Corp.*, it was held as a matter of law that a vehicle could not be in as good a condition as purchased when more than ten months had passed since purchase and the purchaser had used the vehicle to drive all over Ohio on sales trips. 255 S.W.2d at 71. Similarly, in *Hymer*, the court found that "[c]ommon sense and experience suggest the palpable improbability that, after nine months' use by plaintiff, the Pontiac would have been in 'as good a condition as when traded[.]'" 332 S.W.2d at 470.

In the instant case, Shivers filed in the Associate Division of the Circuit Court a petition of which the fourth count was entitled "Request for Recision [sic] Based on Mutual Mistake." The allegations in this count, when considered as an informal pleading as required by § 517.031,[3] could reasonably be construed as a claim for repudiation of the transaction. The undisputed evidence upon the petition was as follows. Shivers purchased the vehicle in October of 2003. She took no steps to repudiate the transaction until sixteen months later when she filed her petition in February of 2005. During that sixteen-month period,[4] Shivers drove the vehicle over 30,000 miles. It stretches credulity beyond its limits to believe that after sixteen months and over 30,000 miles of use the vehicle was in as good a condition as on the date Carr surrendered possession of it to Shivers. Because Shivers cannot meet the requirement that the vehicle be "in as good a condition as it was when purchased," she is not entitled to repudiation. *Hymer*, 332 S.W.2d at 470; *G.F.C.*

3. Section 517.031.1 provides, in pertinent part: "The pleadings of the petition shall be informal unless the court in its discretion requires formal pleadings."

4. We note that Shivers never registered or licensed the vehicle, nor attempted to obtain a Missouri certificate of ownership as required

*Corp.*, 255 S.W.2d at 70–71. For this reason, the trial court did not err in denying Shivers any relief under count four of her petition.

### 3) *Decision*

The judgment of the trial court is affirmed.

BATES, C.J., P.J., and BARNEY, J., concur.

by Missouri law. *See* §§ 301.020, 301.190.1 and 301.210.2. It is arguable that if she had timely taken these steps she might have discovered the title problems within a time period when she was in a position to repudiate the transaction by returning the vehicle in as good a condition as when she received it.