Joe A. CONNAWAY, Appellant,

v.

Gilbert W. WALTERS and Bernice Walters, Respondents.

No. 16504.

Missouri Court of Appeals, Southern District, Division One.

March 28, 1990.

Richard E. Duggan, Sunrise Beach, for appellant.

Gene A. Hilton, Camdenton, for respondents.

CROW, Presiding Judge.

Count I of the petition of plaintiff Joe A. Connaway against defendants Gilbert W. Walters and Bernice Walters averred that defendants maliciously caused an affidavit of adverse possession to be recorded regarding land owned by plaintiff, thereby placing a cloud on plaintiff's title; Count I sought actual and punitive damages. Count III of plaintiff's petition averred plaintiff could not develop or convey the land as long as the cloud existed; Count III prayed for an order commanding defendants to "release" the affidavit from the public records.[1]

The trial court heard the cause without a jury and entered judgment for defendants on both counts. Plaintiff appeals, briefing three points. They are easier understood after a synopsis of the pertinent evidence.

By warranty deed executed September 25, 1952, James M. Canterbury and Esther M. Canterbury conveyed lots 14 and 15 of "Canterbury Lots," a subdivision in Camden County, to Andrew W. Schindler and Vivian G. Schindler.

The subdivision plat shows both lots are 50 feet wide and lie side by side. The depth of each lot appears to be 241 feet. The long axis of each lot runs from southwest to northeast. The front of each lot is the southwest 50–foot side. That side abuts a road having a platted width of 40 feet. Lot 14 is northwest of lot 15, that is, the southeast 241–foot side of lot 14 abuts the northwest 241–foot side of lot 15.

The Lake of the Ozarks lies southwest of the road. According to the plat there is land between the southwest edge of the road and the shoreline; however, the distance between the edge of the road and the shoreline is not shown.

Defendant Gilbert W. Walters testified that the Schindlers were the aunt and uncle of Walters' wife, defendant Bernice Walters. According to Gilbert Walters there were no improvements on lots 14 and 15 when the Schindlers acquired the lots in 1952. Walters testified he helped Andrew Schindler build a cabin on lot 15 that year. In return, said Walters, he was allowed to use the cabin as often as he wished.

Walters testified that commencing in 1952 he, his wife and their children used the cabin almost every weekend from Easter to October. During the remainder of the year he would come once a month to see if everything was alright.

Walters recounted that some time after the cabin was built he helped the Schindlers put a dock in the lake across the road from lot 15. The dock was attached to the land by cables fastened to trees. While Walters did not remember the year this was done, he avowed it was in the "early '50s."

On May 9, 1962, Gilbert Walters and Bernice Walters bought lot 14—which was

---

1. The petition also contained a count denominated "Count II" which was dismissed prior to trial.

still vacant—from the Schindlers. The Walterses moved a "house trailer" onto lot 14. Excavation was required to level the site. According to Gilbert Walters the excavated dirt was pushed to the southwest side of the road to "make a parking place." He explained that at the southwest edge of the traveled portion of the road across from lot 15 and part of lot 14 there is "a very steep bank that goes off there to the water, and the edge of the road comes clear over there along on that bank." The 40–foot platted road, said Walters, goes "over the bank a little bit there, and you can't travel all of that road."

Walters recounted that commencing in 1962 he and his wife spent almost every weekend at the trailer except during the cold months, when he would come once a month to check it. He testified he put a dock in the lake across the road from lot 14 about 1965. The dock was still there at time of trial.[2] The walkway to the dock is attached to the land by pipes driven into the ground.

The Schindlers continued to own lot 15 until they died. Ownership of lot 15 then passed to their daughter, Phyllis D. Renken.

Gilbert Walters testified that when Phyllis acquired lot 15, the dock the Schindlers had installed was replaced by a new one. The latter has remained in the lake across the road from lot 15 ever since.

By warranty deed executed June 28, 1985, Phyllis Renken and her husband conveyed lot 15 to Sharon S. Rogers (defendants' daughter) and Sharon's husband, Darrell. The Rogerses have owned lot 15 ever since.

Defendant Gilbert Walters testified that after he retired in 1983 he would spend an entire month at his lake property when crappie season started in April.

On May 1, 1986, plaintiff sent a letter to the owners of lots 10 through 19 in Canterbury Lots. The letter said:

"I have a firm offer to sell a portion of my real estate which includes any prop-

erty above the 660 level, not to exceed 75' (seventy-five feet) from Lake Road 5–27 extending towards the center of the cove of the Lake of the Ozarks. Specifically, this includes the northwestern boundary line of Lot 10 through the southeastern boundary line of Lot 19. Prior to accepting this offer I wish to give my friends and neighbors the options listed below to enable them to obtain this beach front property if they so desire. [Here the letter outlined three different purchase plans.]

The options listed above will become effective July 1, 1986. I will expect to hear from each of you prior to that time or I will as of that date proceed with the sale of the above described property."

On May 20, 1986, defendants, on the advice of their lawyer, filed a document captioned "Affidavit of Adverse Possession" in the office of Recorder of Camden County. The document said:

"In Re Title To: All that part of the following described property which lies above contour elevation 662 feet: A strip of land lying in a Southwesterly direction across Lake Road 5–27 ... between said Lake Road and the 662 contour, more particularly described as the projection of the Southeasterly line of Lot 15 of Canterbury Lots, a subdivision of part of Lots 5 and 6 of the Northwest Quarter of Section 6, Township 39 North, Range 17 West ... Southwesterly to the 662 contour line, thence in a Northwesterly direction along said contour line to a point where the projection of the Northwesterly line of Lot 14, Canterbury Lots, crosses said contour line, thence Northeasterly to the right-of-way line of Lake Road 5–27 thence along said right-of-way line in a Southeasterly direction to the point of beginning where the said projection line of the Southeasterly line of Lot 15 crosses the said right-of-way line.

State of Missouri )
               ) ss
County of Camden )

---

2. Trial occurred June 28, 1989.

Gilbert W. Walters and Bernice Walters, husband and wife, each being first duly sworn, on their oath, state: that they have personally known the above described real estate since 1952 or 1953; that they and their predecessors in title as to that portion of the above described real estate in front of Lot 14, and that Darrell G. Rogers and Sharon S. Rogers, husband and wife and their predecessors in title, as to that portion of the above described real estate in front of Lot 15, have been in the actual, open, notorious, exclusive and continuous possession of said land claiming the title thereto during all of said time; that during all of said time Affiants have never heard the title to said land questioned.

s/ Gilbert W Walters s/ Bernice Walters
. . . ."

On April 23, 1987, plaintiff's lawyer sent defendants a letter stating that the affidavit had created a cloud on the title to plaintiff's "lakefront property adjacent to the Canterbury Lots." The letter demanded that defendants release the affidavit "from the record."

Defendants declined to do so. Plaintiff thereupon commenced this action.

At trial plaintiff based his claim of ownership on a warranty deed to him and his then wife, Kathryn (since deceased), from James M. Canterbury and Esther M. Canterbury (the same grantors who had conveyed lots 14 and 15 to the Schindlers in 1952). Plaintiff's deed from the Canterburys was signed October 18, 1958, and, insofar as pertinent here, conveyed all the land in a certain tract—described by metes and bounds—"which lies above contour elevation 662 feet." [3]

Plaintiff presented no evidence demonstrating that there was any land between the southwest edge of the road right-of-way and contour elevation 662 in the area

described in defendants' affidavit. Plaintiff did present a surveyor who had recently surveyed lots 14 through 19 in Canterbury Lots. The surveyor testified that the purpose of his survey was to establish "the southwesterly line of the road" shown on the plat of Canterbury Lots and to establish the "662 contour line" of the lake in relation to lots 14 through 19. The surveyor admitted, however, that he did not commence his survey at a "government corner."

When plaintiff's lawyer asked the surveyor if he was able to determine whether there was any land lying between the southwest edge of the road right-of-way and the 662 contour line, in an area bounded on the northwest by the northwest boundary of lot 14 (projected southwesterly to the 662 contour line) and bounded on the southeast by the southeast boundary of lot 15 (projected southwesterly to the 662 contour line), defendants' lawyer objected that such testimony was incompetent because the surveyor did not begin at a corner established by the government.[4] The trial court sustained the objection. Plaintiff made no offer of proof and he assigns no error here regarding the trial court's ruling.

On the subject of adverse possession, in addition to the evidence already mentioned defendant Gilbert Walters testified that when the Schindlers bought lots 14 and 15 in 1952 he (Walters) cleared brush and debris from the area between the traveled portion of the road and the shoreline across from lot 15. When he and his wife acquired lot 14 in 1962 he cleared the area between the traveled portion of the road and the shoreline across from lot 14. Walters avowed he had maintained those areas since 1952 and 1962, respectively, cutting weeds and picking up debris. Additionally, said Walters, he built three concrete steps on the bank between the edge of the road and the walkway to his dock. According to

---

**3.** Although plaintiff's letter of May 1, 1986, referred to "any property above the 660 level," at trial he claimed no ownership of any land below contour elevation 662.

**4.** See: *Cantrell v. Bank of Poplar Bluff*, 702 S.W.2d 935, 938–39[1] (Mo.App.1985).

Walters, plaintiff never told him that his dock and the one for lot 15 should not be there.

On cross-examination Walters admitted that until he received the May 1, 1986, letter from plaintiff, he (Walters) had always assumed that the land between the traveled portion of the road and the shoreline was "lake property" belonging to Union Electric. According to Walters, he was told this by James Canterbury when the Walterses bought lot 14. Walters conceded he claimed no ownership rights to the land between the traveled portion of the road and the shoreline until 1986.

Defendant Bernice Walters testified she, like her husband, had been familiar with lots 14 and 15 since the Schindlers purchased them in 1952. Her testimony regarding the time spent at the lake, the location of the docks for lots 14 and 15, and the maintenance of the area between the traveled portion of the road and the shoreline paralleled her husband's. She avowed that since 1962 she and he had claimed the right to fasten their dock to the land across the road from lot 14 and the right to park their car and boat trailer along the roadside. Since 1952 she had believed the owners of lot 15 had the right to use the land across the road from that lot. Neither plaintiff nor anyone else had ever objected to the docks.

On cross-examination Bernice Walters conceded defendants had never paid taxes on any lake property other than lot 14. She added, however, that she "always thought we owned to the water."

Defendants presented other evidence corroborating their testimony regarding the use of the land between the traveled portion of the road and the shoreline since 1952.

Plaintiff presented evidence that he had maintained the area between the southwest edge of the road and the lake since 1958, that he had put up "no trespassing" signs, and that he had paid the taxes on the property.

The trial court's judgment included this:

"... the Court, after hearing the evidence, finds that Plaintiff has failed to prove that there is any land above the 662 contour of the lake; even if it is assumed there is land above the 662 contour, the Court finds that Plaintiff has failed to prove that the affidavits of adverse possession were maliciously published by Defendants; therefore, the Court finds that the Plaintiff has failed to make his case under Count I and/or Count III."

Plaintiff's first point relied on avers the trial court erred in ruling that plaintiff failed to prove defendants' affidavit of adverse possession was maliciously published. Plaintiff maintains such ruling was against the weight of the credible evidence in that defendants had never claimed title to the property until after they learned plaintiff intended to develop it, and the recording of the affidavit was done for the sole purpose of preventing plaintiff from implementing his plans.

Plaintiff's second point states the trial court incorrectly applied the law in holding that plaintiff failed to prove defendants maliciously published the affidavit. Plaintiff proclaims that the recordation of a false instrument is presumed to be malicious as a matter of law. According to plaintiff, defendants had no valid reason to believe they had legal title to the property, consequently they knew the facts in their affidavit were false.

Plaintiff's third point declares the trial court erred in failing to order defendants to remove the affidavit from the records in that the affidavit constitutes a cloud on plaintiff's title and defendants failed to establish they had obtained title by adverse possession to any part of plaintiff's property.

The parties' briefs cite scant authority on slander of title to real estate. The most recent discussion of the subject is found in *Tongay v. Franklin County Mercantile Bank,* 735 S.W.2d 766, 770[2] (Mo.App. 1987), where the court said:

"Three things are necessary to maintain the action for slander of property or of

title: 1) the words must be false; 2) they must be maliciously published; 3) they must result in pecuniary loss or injury to the plaintiff. *Butts v. Long*, 94 Mo.App. 687, 68 S.W. 754, 755 (Mo.App.1902)."

In addition, we learn from *Metcalf v. American Surety Co. of New York*, 360 Mo. 1043, 232 S.W.2d 526, 531[6] (1950), that *title*, in the sense of some interest or estate in the property, is essential to an action for slander of title.

Defendants, in their brief, assert that one of the issues in this litigation is whether the property described in their affidavit—ownership of which is claimed by plaintiff—actually exists. Defendants emphasize there was no evidence there is any land between the southwest edge of the road right-of-way and contour elevation 662 in an area bounded on the northwest by the northwest boundary of lot 14, projected southwesterly to the 662 contour line, and bounded on the southeast by the southeast boundary of lot 15, projected southwesterly to the 662 contour line. Defendants point out that if all the land on the lake side of the road right-of-way is below contour elevation 662, the area that is the subject of this suit does not exist. If it does not exist, say defendants, plaintiff cannot own it and cannot have any claim for slander of title to it.

Plaintiff filed no reply brief challenging defendants' argument.

The trial court, as reported earlier, found that plaintiff failed to prove there was any land above contour elevation 662 on the lake side of the road right-of-way in the area described in defendants' affidavit. Plaintiff does not attack that finding; he simply ignores it.

The record amply supports the trial court's finding.

First, we have already seen that plaintiff was unsuccessful in his attempt to make such a showing, as the surveyor he presented at trial had not commenced his survey from a corner established by the government. When that came to light the trial court, on objection by defendants, refused to permit the surveyor to testify whether any land lay between contour elevation 662 and the southwest edge of the road right-of-way in the area described by defendants' affidavit.

Second, defendant Gilbert Walters testified that the road right-of-way extends over the bank on the lake side. He presented a photograph showing the lake at a height covering the portion of the walkway to his dock for a distance of several feet between the road and the dock. The water appeared to be at the edge of the traveled portion of the road. Another photograph taken from the road in front of lot 14 showed water covering the traveled portion of the road in front of lot 15 and in front of part of lot 14.

Finally, the portion of the plat of Canterbury Lots supplied us does not show where contour elevation 662 lies with respect to the southwest edge of the road right-of-way. No line on the plat is identified as contour elevation 662.

There was, therefore, no evidence demonstrating that the southwest edge of the road right-of-way at lots 14 and 15 lies above contour elevation 662. If the elevation of that edge of the right-of-way is 662 or lower, it is obvious there can be no land on the lake side of the right-of-way above elevation 662.

The burden was on plaintiff to prove his case. *Chandler v. New Moon Homes, Inc.*, 418 S.W.2d 130, 135[4] (Mo. banc 1967); *Show–Me Restoration Services v. Harlan*, 778 S.W.2d 350, 351 (Mo.App.1989). In keeping with the general rule that the burden always rests upon the plaintiff in any action to prove all factual elements essential to his recovery, *Hymer v. Dude Hinton Pontiac, Inc.*, 332 S.W.2d 467, 469[3] (Mo.App.1960), it was incumbent on plaintiff in the instant action for slander of title to show he had an interest in the land described in defendants' affidavit. He did not fulfill that duty, as he failed to prove there is any land between the southwest edge of the road right-of-way and contour elevation 662 in the area described in defendants' affidavit.

We recognize, of course, that plaintiff could argue that even if his proof failed in the above respect, his evidence nonetheless demonstrated he had acquired ownership of the land described in defendants' affidavit by adverse possession. As reported earlier, plaintiff presented evidence from which a trier of fact could arguably have found that plaintiff had maintained the area described in defendants' affidavit since 1958, picking up trash, hauling away debris and posting "no trespassing" signs. The trial court, however, was not required to believe that evidence. *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988).

The trial court made no finding as to whether plaintiff had maintained the land described in defendants' affidavit. As this was a judge-tried case, all fact issues upon which no specific findings were made shall be considered as having been found in accordance with the result reached. Rule 73.01(a)(2), Missouri Rules of Civil Procedure (1990); *Goldstein v. Studley*, 452 S.W.2d 75, 78–79[5] (Mo.1970). Accordingly, we assume the trial court found plaintiff had not acquired ownership of the land described in defendants' affidavit by adverse possession.

It follows from what we have said that we need not address plaintiff's first two points in this appeal. They assert the trial court erred in finding plaintiff failed to prove defendants maliciously published the affidavit. As plaintiff's case failed on the ownership element, the presence or absence of malice on the part of defendants is immaterial.

It is likewise unnecessary to address plaintiff's third point, which assigned error in the trial court's failure to order defendants to remove the affidavit from the public records. As plaintiff failed to prove any interest in the land described in the affidavit, he demonstrated no right to such relief.

Judgment affirmed.

PREWITT and PARRISH, JJ., concur.