Raymond A. SCHMIDT and Betty L. Schmidt, Appellants,

v.

Vera L. WARNER and Robert G. Warner, Respondents.

No. 21228.

Missouri Court of Appeals, Southern District, Division One.

Oct. 24, 1997.

---

Gregory D. Williams, Sunrise Beach, for appellants.

Gene A. Hilton, Camdenton, for respondents.

CROW, Judge.

This is a dispute between owners of land in Canterbury Lots, a subdivision in Camden County. The issues can be coherently addressed only after an account of the devilishly intricate facts.

Plaintiffs, Raymond A. Schmidt and Betty L. Schmidt, commenced this suit October 2, 1990, by filing a three-count petition against Robert S. Warner and Vera L. Warner. Plaintiffs' petition and the Warners' answer established that the Warners then owned all of Lot 10 and part of Lot 11 in Canterbury Lots.

The plat of Canterbury Lots shows Lot 10 is a rectangle, the long axis of which runs southwest to northeast. Consequently, the long sides of Lot 10 are the northwest and southeast sides; the short sides are the southwest and northeast sides.

The northwest side of Lot 10 abuts the southeast side of Lot 9; that is, Lot 9 lies immediately northwest of, adjacent to, and parallel with, Lot 10. The plat shows the northwest side of Lot 10 (the southeast side of Lot 9) is 253.78 feet in length.

The northeast side of Lot 10—one of its short sides—is shown as 50 feet in length. The southwest side of Lot 10—its other short side—abuts the right-of-way of a road. The right-of-way runs northwest to southeast. The width of the right-of-way is shown as 40 feet. The length of the southwest side of Lot 10 (the side that abuts the right-of-way) is shown as slightly less than 51 feet.

The shoreline of the Lake of the Ozarks is southwest of, and essentially parallel to, the road right-of-way. According to the plat, there is land between the southwest edge of the right-of-way and the shoreline; however, the distance between the right-of-way and the shoreline is not shown.

Plaintiffs' petition averred they own a tract of land described as:

" ... projected from dividing line between Lots 9 and 10 of Canterbury lots Southwesterly to Southwesterly edge of Lake Road 5–27 thence Southeasterly 50 feet thence Southwesterly to include all property above 662 elevation, not to exceed 75 feet, thence 50 feet Northwesterly thence Northeasterly to point of beginning. Herein known as Tract 20."

We note that the plat of Canterbury Lots shows Lots numbered 1 through 19. No "Tract 20" appears anywhere on the plat.

As we comprehend the description quoted above, the described parcel would lie directly southwest of the road right-of-way. The parcel's northeast boundary would be the right-of-way; its southwest boundary would be contour elevation 662; its northwest boundary would be the dividing line between Lots 9 and 10, projected southwesterly to elevation 662; its southeast boundary would be just slightly northwest of, and parallel to, the southeast boundary of Lot 10, projected southwesterly to elevation 662.

Plaintiffs' brief avers: "At its widest point, the portion of the strip which lies outside the right-of-way of the road is slightly less than 3 feet wide. At its narrowest point, no portion of the strip lies outside of the road right of way."

It is thus evident that if the described parcel indeed exists, and if it can be accurately staked out on the surface of the earth, it consists of an irregularly shaped sliver 50 feet long. For convenience, we henceforth refer to the parcel as "Tract 20," its designation in Plaintiffs' petition.

Plaintiffs' petition alleged the Warners installed a boat dock on Tract 20 without Plaintiffs' consent; the petition further alleged the Warners had trespassed on Tract 20 in going to and from the dock; the petition also pled other conduct by the Warners adverse to Plaintiffs' alleged property rights.

Count I of Plaintiffs' petition prayed the trial court to command the Warners to re-

move any encroachment on Plaintiffs' property and to enjoin the Warners from future trespasses. Count II prayed for an order compelling the Warners to surrender possession of Tract 20 to Plaintiffs.[1]

Defendant Robert S. Warner died while the case awaited trial. The docket sheet displays this entry: "Based upon suggestion of death filed, case dismissed as to sep. deft Robert S. Warner."

Plaintiffs thereafter proceeded to trial against Vera L. Warner alone.

The evidence revealed that all of the land mentioned in this opinion once belonged to Union Electric Land and Development Company ("UE"). By a document denominated "Conveyance of Right of Way," signed March 27, 1940, and filed for record April 24, 1940, UE did "remise, release and forever quit claim" to Camden County a strip of land 40 feet wide. The conveyance states Camden County is "to have and to hold the [strip] . . . for the purpose of establishing and maintaining a Public Road on the said land herein conveyed, forever."

As we understand the parties' briefs, they agree that the 40–foot strip described in the UE conveyance is the road right-of-way shown on the plat of Canterbury Lots and is also the "Lake Road 5–27" referred to in the description of Tract 20 in Plaintiffs' petition.

The UE conveyance describes the 40–foot strip as commencing at a specific beginning point, thence proceeding by courses and distances along a "center line," the strip extending outward 20 feet on each side of the line.

At trial, Gregory Wayne Hasty, a licensed surveyor retained by Plaintiffs, testified that the monuments upon which the description in the UE conveyance is based are now "submerged in the Lake of the Ozarks," hence the location of the right-of-way in that con-

veyance "cannot be determined . . . [i]t can't be surveyed."

We shall synopsize more of Hasty's testimony later. First, however, it is necessary to relate how Plaintiffs acquired Tract 20.

The parties' briefs agree that in 1945, UE conveyed land "above the 662 contour" to one Willmore.[2] Thereafter, through mesne conveyances, a part of that land was conveyed to James M. Canterbury and Esther M. Canterbury in August, 1949. The deed to the Canterburys describes land by metes, bounds, courses and distances, all of which "lies above contour elevation 662 feet."[3]

On September 17, 1952, the Canterburys filed the plat of Canterbury Lots with the Recorder of Camden County. The plat shows the right-of-way of the road (then apparently known as "Lake Road No. 12") as 40 feet in width. According to the plat, the southwest edge of Lots 9 and 10 is the northeast edge of the road right-of-way. As reported earlier, the Lake of the Ozarks is shown on the plat; however, we do not find a line on the plat showing contour elevation 662, hence its location in regard to the right-of-way and the lots in Canterbury Lots is not depicted.

Our examination of the 1949 deed to the Canterburys reveals it included land in addition to that which they platted as Canterbury Lots. However, as noted earlier, the deed conveyed only land lying above contour elevation 662.

By a warranty deed signed October 18, 1958, the Canterburys conveyed to Joe A. Connaway and Kathryn Connaway certain land "which lies above contour elevation 662 feet." The land is described by metes, bounds, courses and distances. The deed also conveyed to the Connaways all of Can-

1. As reported in the second paragraph of this opinion, Plaintiffs' petition comprised three counts. However, as shall become evident *infra*, the relief sought in the third count need not be recited.

2. The conveyance from UE to Willmore was received in evidence at trial but, according to Plaintiffs' brief, was "omitted from the record on appeal due to length."

3. The deed explains the term "contour elevation 662 feet" as follows: "Such elevation . . . refers to the United States Geological Survey Bench Mark at Bagnell, Missouri, having an elevation of 586.742 feet above Mean Gulf Sea Level, Biloxi, Mississippi; and wherein the word 'contour' is recited in connection with said elevation, reference is had to the contour of the project boundary of Project 459, Missouri."

terbury Lots subdivision except Lots 1, 2, 6, 12, 14, 15 and 19.[4]

Almost 28 years later, Joe A. Connaway signed a warranty deed on July 21, 1986, conveying Tract 20 to Plaintiffs.[5] Plaintiff Raymond A. Schmidt testified he bought Tract 20 because he was told someone was going to develop Tract 20 and other land along the shoreline. By acquiring Tract 20, he would have "a little bit more view of the lake." [6]

Plaintiffs commenced this suit some four years after acquiring Tract 20. Trial began June 17, 1992.

In an effort to establish the location of Tract 20 on the surface of the earth, Plaintiffs presented testimony by surveyor Hasty, mentioned earlier in this opinion. As previously noted, Hasty was unable to survey the description of the road right-of-way described in the 1940 conveyance from UE to Camden County because the monuments to which the description in that conveyance is tied are beneath the lake. Inasmuch as the northeast boundary of Tract 20 is the southwest edge of the right-of-way, the primary issue at trial was where that line lies on the surface of the earth.

Hasty testified he located the right-of-way by relying on monuments in Canterbury Lots which he determined had been set by an earlier surveyor, Heavner, who laid out the subdivision. Those monuments were set after the conveyance from UE to Camden County establishing the right-of-way. The only monument Hasty found that antedated the UE conveyance was an "original government monument" about a half mile east of Canterbury Lots. Hasty avowed he also based his survey on that monument.

Hasty's survey shows that at the northwest boundary of Tract 20, the distance from the southwest edge of the right-of-way to contour 662 is 2.95 feet. Proceeding south-east, the distance between the edge of the right-of-way and contour 662 narrows until there is no land between the right-of-way and contour 662. Indeed, Hasty testified that based on "the surveyed centerline of the roadway, according to the recorded plat of the subdivision, in that particular area there would be a portion of [the right-of-way] which would be below the 662 contour line."

After narrowing to a dimension of zero, the distance between the southwest edge of the right-of-way and contour 662 gradually widens before reaching the southeast boundary of Tract 20. At that boundary, the distance between the right-of-way and contour 662 is, according to Hasty's survey, 1.21 feet.

However, Hasty's testimony, together with photographs received in evidence at trial, showed that not all of the 40-foot right-of-way is used as a road. A portion of the right-of-way has a dirt and gravel surface. That portion is apparently used for vehicular traffic. According to Hasty's testimony and survey, the width of that portion of the right-of-way varies between 20 and 25 feet. The portion of the right-of-way not used as a road is covered with grass and brush, and there are trees in that portion. One such tree is an oak with an 18-inch diameter. As we interpret Hasty's survey, at the northwest boundary of Tract 20 the distance between the southwest edge of the traveled portion of the right-of-way (represented by the gravel) and contour 662 is approximately 15 feet; at the southeast boundary of Tract 20, the distance between the southwest edge of the traveled portion and contour 662 is approximately 11 feet.

Plaintiffs' brief concedes: "It was undisputed at trial that Union Electric Company is the owner of the ground below the 662 contour line."

4. The deed from the Canterburys to the Connaways is referred to in *Connaway v. Walters,* 786 S.W.2d 913, 916 (Mo.App. S.D.1990), an earlier case involving Canterbury Lots. As shall appear *infra,* the trial court relied on that case in adjudicating the instant case.

5. The opinion in *Connaway,* footnote 4, *supra,* indicates Kathryn Connaway died between the date the Connaways acquired their land from the Canterburys and the date of trial in that case (June 28, 1989). 786 S.W.2d at 916 and 915 n. 2.

6. We glean from the testimony of Plaintiff Raymond A. Schmidt that Plaintiffs own Lot 9. As explained earlier, Lot 9 lies immediately northwest of, adjacent to, and parallel with, Lot 10.

The trial court entered judgment commanding Defendant Vera L. Warner (the only defendant at that time) to remove any encroachments which exist on Tract 20 and to surrender possession of Tract 20 to Plaintiffs.[7]

Defendant Vera L. Warner thereafter filed a post-judgment motion. The trial court subsequently set aside the judgment.

The next significant event occurred when Plaintiffs—with leave of court—filed an amended petition adding Robert G. Warner as a defendant. We gather from the record that Robert G. Warner is Vera Warner's son. We henceforth refer to him and her as "Defendants."[8]

Plaintiffs' amended petition, like their original petition, comprised three counts. However, Plaintiffs' amended petition described the disputed parcel of land differently than the description of Tract 20 (set forth in Plaintiffs' original petition and quoted earlier in this opinion). The description in the amended petition, as we comprehend it, begins in the center of the right-of-way (as surveyed by Hasty) and describes land southwest of the centerline extending past the 662 contour. The description was apparently based on a quit-claim deed from Joe A. Connaway and Phyllis L. Connaway to Plaintiffs, signed June 16, 1992 (the day before the first trial). Plaintiffs had offered that deed in evidence at the first trial; however, the trial court refused it when Defendant Vera L. Warner objected that the description in it differed from the description in Plaintiffs' original petition (the pleading on file at the time of the first trial).

Plaintiffs' amended petition, like their original petition, sought injunctive relief and other relief.

The second trial began October 28, 1994. Plaintiffs and Defendants appeared by their respective lawyers. The trial court announced it would consider the evidence in the earlier trial and would allow the parties to present any additional evidence they wished. Defendants objected to that procedure, but their objection was unavailing.

Plaintiffs presented a small amount of evidence. Defendants presented no evidence.

The trial court ultimately entered judgment for Defendants on all three counts of Plaintiffs' amended petition. The judgment states, *inter alia:* "Plaintiffs presented no evidence that there was any land between the Southwest edge of the road right-of-way and contour elevation 662 in the area in front of Lot 10.... Any land below the 662 contour line was not proven to be owned by the [Plaintiffs] in this matter.... This problem of trying to establish property between the 662 contour line and the right of way of the roadway has already been examined by this Court. *Connaway v. Walters,* 786 S.W.2d 913 (Mo.App. S.D.1990)."

Plaintiffs bring this appeal from that judgment. The first of their three points relied on reads:

"The Trial Court erred in finding that there was no evidence of the existence of land between the road right-of-way and the 662 contour in that the survey plat [of Canterbury Lots] and the testimony of [surveyor Hasty] both established the existence and location of such land."

Plaintiffs argue it was unnecessary to establish the location of the right-of-way using the description in the 1940 UE conveyance to Camden County—an impossible task according to Hasty. Plaintiffs maintain there was other evidence from which Hasty correctly located the right-of-way on the surface of the earth. According to Plaintiffs, that evidence consisted of "the physical location of the roadway," the plat of Canterbury Lots, and monuments found by Hasty in Canterbury Lots, apparently set in 1952 by surveyor Heavner when he laid out the subdivision.

Plaintiffs cite *Yocom v. Kindle,* 766 S.W.2d 140, 149[4] (Mo.App. S.D.1989), for

---

7. The judgment also adjudicated the third count of Plaintiffs' petition; however, as indicated in footnote 1, *supra,* the relief sought in the third count need not be recited.

8. The judgment from which Plaintiffs appeal identifies the defendants as Vera L. Warner and "Robert S. Warner." However, the body of the judgment refers to "Robert G. Warner." We assume the title of the case shown on the judgment is wrong.

the proposition that a recorded plat showing a roadway as a boundary of a lot is competent evidence that the boundary of the lot is the edge of the roadway, and that the road, as a monument, marks the boundary. Plaintiffs' understanding of *Yocom* is correct; however, *Yocom* does not aid Plaintiffs.

In *Yocom,* as here, there was an issue as to where the parcel lay on the surface of the earth. Consequently, although the plat established that the boundary of the road was one of the boundaries of the parcel, it was still necessary to establish where the boundaries lay on the earth.

*Yocom* recognizes there may be instances where a road, like any object permanently attached to the earth, constitutes a monument. Here, however, it is evident that the edges of the right-of-way were not precisely defined on the ground, as there was no paved surface and no curbs of concrete or stone. The width of the traveled portion of the right-of-way varied between 20 and 25 feet, and apparently meandered along the route of the 40–foot right-of-way conveyed by UE in 1940. However, Hasty conceded that "the physical location of the roadbed itself" is "probably not" the same as the right-of-way in the UE conveyance.

■ As to the monuments Hasty found in the subdivision, there was testimony by Gilbert Walters[9] that he became familiar with Lot 14 in Canterbury Lots in 1952 and bought it in 1962. After acquiring Lot 14, Walters built a "rock wall" one foot off the right-of-way, behind an "original pin" at the southwest corner of Lot 14. As years passed, the pin vanished because of erosion. Walters avowed that around 1986 or "along in there," a surveyor[10] set a new pin "eight to ten inches behind the rock wall on the lot side." Inasmuch as the wall is two feet wide, the new pin was set nearly three feet northeast of the original pin. According to Walters, "That puts my rock wall in the road."

The trial court could have reasonably inferred from Walters' testimony that at least one surveyor, in endeavoring to establish the road right-of-way, had marked it nearly three feet northeast of where the original surveyor, Heavner, had marked it. Furthermore, nothing on the plat of Canterbury Lots indicates that Heavner determined the location of the right-of-way in 1952 by using the monuments to which the description in the 1940 UE conveyance was tied.

■ The burden was on Plaintiffs to prove their case. *Chandler v. New Moon Homes, Inc.,* 418 S.W.2d 130, 135[4] (Mo. banc 1967). Although Hasty evidently did the best he could in attempting to locate Tract 20 on the surface of the earth, his testimony, at best, showed that at its widest point, Tract 20 is less than three feet wide, and at its narrowest point Tract 20 does not exist. Given the small dimensions on which this case hinged, and mindful that the trial court was not required to believe Hasty had located Tract 20 with indisputable accuracy, *Herbert v. Harl,* 757 S.W.2d 585, 587[1] (Mo. banc 1988), we hold the trial court did not err in finding Plaintiffs failed to prove the existence of land between the right-of-way and contour 662 in the area described as Tract 20.

In another segment of the argument following their first point, Plaintiffs present a theory that the UE conveyance vested Camden County with only "an easement for right of way purposes, not the fee ownership of a strip of ground." Plaintiffs declare that the conveyance of a right-of-way does not prohibit the fee owner from making such other use of the land as does not interfere with the right-of-way. Therefore, say Plaintiffs: "The presently un-utilized portion of the roadway would appear to be available for such uses as the fee owner may make without interfering with the right of way."

The argument yields no clue as to how the above hypothesis demonstrates error by the trial court. More importantly, however, the hypothesis is not set forth in Plaintiffs' first point (quoted *supra* ).

■ The questions for decision on appeal are those stated in the points relied on; a question not there presented will be considered abandoned. *Pruellage v. De Seaton*

---

**9.** One of the defendants in *Connaway,* 786 S.W.2d 913, footnote 4, *supra.*

**10.** Not Hasty.

*Corp.,* 380 S.W.2d 403, 405[3] (Mo.1964); *Greene County Concerned Citizens v. Board of Zoning Adjustment of Greene County,* 873 S.W.2d 246, 255[3] (Mo.App. S.D.1994). Issues to which an appellant alludes only in the argument portion of his brief are not presented for review. *Berger v. Huser,* 498 S.W.2d 536, 539[2] (Mo.1973); *Greene County Concerned Citizens,* 873 S.W.2d at 255[4]. Accordingly, we do not consider Plaintiffs' hypothesis regarding use of the portion of the right-of-way adjacent to the traveled portion.

Plaintiffs' second point reads:

"The Trial Court erred in finding that [Plaintiffs] failed to prove the existence of land between the county road right-of-way and the 662 contour in that ownership of land adjoining a road extends to the centerline of the road, subject to the road right-of-way easement, and [Plaintiffs] proved the location of the road centerline and ownership between the centerline and the 662 contour."

The argument following this point reveals it is based on the quit-claim deed from Joe and Phyllis Connaway to Plaintiffs, signed June 16, 1992. As reported earlier, Plaintiffs offered that deed in evidence at the first trial, but the trial court refused it because the description differed from the description of Tract 20 in Plaintiffs' original petition.

Plaintiffs offered the quit-claim deed in evidence at the second trial. By then, as we have seen, they had replaced their original petition with an amended petition in which the description coincided with the quit-claim deed. The trial court received the deed in evidence over Defendants' objection.

The theory of Plaintiffs' second point, as we divine it from the argument, is that the conveyance of a platted lot adjoining a street "conveys the fee title to the center of the street." Consequently, Plaintiffs maintain that the 1958 deed from the Canterburys to Joe and Kathryn Connaway conveyed the fee to the half of the right-of-way on the lake side. Accordingly, say Plaintiffs, the quit-claim deed from Joe and Phyllis Connaway to Plaintiffs in 1992 conveyed all of the land from the center of the right-of-way to contour 662, between the northwest and south-

east boundary lines of Lot 10, projected southwest to contour 662. Based on that assumption, Plaintiffs argue:

"The Trial Court therefore clearly erred in holding that [Plaintiffs were] required to prove the existence of land between the right-of-way of the County Road and the 662 contour line. Rather, [Plaintiffs] should only have been required to show the existence of land between the centerline of the County Road and the 662 contour line. [Hasty's survey] clearly showed the existence of such land belonging to [Plaintiffs]."

■ We have carefully studied Plaintiffs' amended petition. Although it pleads the description in the 1992 deed, we find no averment that the right-of-way conveyed by UE to Camden County in 1940 was only an easement, leaving the fee in UE, nor do we find any averment that by mesne conveyances thereafter, Joe Connaway eventually acquired the fee to the half of the right-of-way nearest the lake.

Furthermore, nothing in the record indicates Plaintiffs tried the case on the ingenious theory tendered in their second point. Plaintiffs tried the case (both times) on the theory that they owned land between the southwest edge of the right-of-way and contour 662, not on the theory that they owned everything from the centerline of the right-of-way to contour 662.

The trial court's judgment, which contains findings of fact and conclusions of law, confirms that the case was tried on the theory identified in the second sentence of the preceding paragraph. The judgment demonstrates that the trial court found for Defendants because Plaintiffs failed to prove any land existed between the southwest edge of the right-of-way and contour 662, between the northwest and southeast boundary lines of Lot 10, projected southwest to contour 662.

■ Cases are reviewed in the appellate courts on only the theory upon which they are tried in the trial courts. *Olsten v. Susman,* 362 S.W.2d 612, 614[3] (Mo.1962). An appellate court will not, on review, convict a

trial court of error on an issue which was not put before it to decide. *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 36[12] (Mo. banc 1982), *appeal dismissed,* 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983).

However, even had Plaintiffs presented the theory in their second point to the trial court, the theory would have failed. As Defendants point out, all the land between the center of the right-of-way and the southwest edge of the right-of-way (the lake side) is a public road, irrespective of who owns the underlying fee. Plaintiffs demonstrated no right to exclude Defendants from any part of the right-of-way, even the part lying outside the traveled portion.

As emphasized earlier, Plaintiffs concede it was undisputed at trial that Union Electric Company owns the land below contour 662. Consequently, it was still incumbent on Plaintiffs to prove land exists between the southwest edge of the right-of-way and contour 662, between the northwest and southeast boundary lines of Lot 10, projected southwest to contour 662. The trial court found Plaintiffs failed to do so. In denying Plaintiffs' first point, we held the trial court did not err in so finding. It follows that Plaintiffs' second point is without merit.

Plaintiffs' final point avers the trial court erred in relying on *Connaway,* 786 S.W.2d 913, in that *Connaway* involved a different parcel of land and a different factual situation.

We agree that *Connaway* involved different land and different facts. However, that does not mean the trial court's reference to *Connaway* constitutes reversible error.

On appeal in a court-tried case, an appellate court is concerned with only the correctness of the result, not the route taken by the trial court to reach that result. *Dickinson v. Ronwin,* 935 S.W.2d 358, 365[13] (Mo.App. S.D.1996). A correct decision will not be disturbed on appeal merely because the trial court gave a wrong or insufficient reason. *Evans v. Wittorff,* 869 S.W.2d 872, 875[4] (Mo.App. S.D.1994). Therefore, the trial court's reference to *Connaway* as an illustration of the difficulty in proving land exists between contour 662 and the south-

west edge of the right-of-way is irrelevant in determining whether the judgment is erroneous.

Plaintiffs' third point is denied.

Judgment affirmed.

GARRISON, P.J., and PREWITT, J., concur.