**Jeremaine PERRY, Movant–Appellant,**

v.

**STATE of Missouri, Respondent– Respondent.**

**No. 22953.**

Missouri Court of Appeals, Southern District, Division Two.

Jan. 19, 2000.

Petition for Rehearing and Transfer Denied Feb. 9, 2000.

Application for Transfer Denied March 21, 2000.

James R. Wyrsch, Jacqueline A. Cook, Charles M. Rogers, Wyrsch, Hobbs, Mirakian & Lee, P.C., Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barbara K. Chesser, Asst. Atty. Gen., Jefferson City, for respondent.

JAMES K. PREWITT, Judge.

Following jury trial, Movant was convicted of second-degree murder and was sentenced to life imprisonment. The judgment was affirmed. *See State v. Perry,* 954 S.W.2d 554 (Mo.App.1997), *cert. denied,* 524 U.S. 905, 118 S.Ct. 2062 (1998).

On February 24, 1998, Movant filed a timely *pro se* motion to vacate, set aside or correct the judgment or sentence pursuant to Rule 29.15. An amended motion was filed on May 11, 1998, and an evidentiary hearing was held on August 20, 1998. Following that hearing, the motion court filed its Findings of Fact and Conclusions of Law denying the motion on April 12, 1999. Movant appeals that denial.

Review of a ruling on a Rule 29.15 motion is limited to determining whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(k). Those determinations are clearly erroneous only if the appellate court has a firm and definite impression that a mistake has been made. *State v.*

*Martin,* 882 S.W.2d 768, 770 (Mo.App. 1994). Movant has the burden to prove grounds for relief by a preponderance of the evidence. *State v. Stepter,* 794 S.W.2d 649, 657 (Mo.banc 1990).

For a detailed account of the facts, see *Perry,* 954 S.W.2d at 557–58. Samuel Duke, Sr., the Movant's grandfather, was fatally shot on January 2, 1993. On January 7, Movant was arrested as a suspect in the murder of his grandfather and was charged in the Juvenile Division of the Greene County Circuit Court. On May 19, 1993, a hearing was held on a motion filed by the Juvenile Officer to dismiss the juvenile petition to allow Movant to be prosecuted under the general law. On January 19, 1994, the court entered its order dismissing the petition to allow prosecution under the general law.[1]

On or about March 1, 1994, Movant was charged by an information with murder in the first degree in violation of § 565.020.2, RSMo. Appellant was subsequently convicted of murder in the second degree.

The day of the killing, Detective Doug Thomas of the Springfield Police Department interviewed Movant in the presence of his parents. Movant denied killing his grandfather. Detective Thomas conducted a second interview during the early morning hours of January 3, 1993. On January 4, 1993, Movant and his parents consulted with attorney Dee Wampler. Mr. Wampler represented Movant at the time of his arrest, and continued to represent Movant until March 1993.

Mr. Wampler testified that Movant and his parents initially met with him on January 4, during the noon hour, and that they had a previously set an appointment with the authorities for 1:30 that afternoon. Movant's father, however, testified that the appointment with Wampler was for 7:30 a.m. or 8:30 a.m., and that no interview with the police had been scheduled. Wampler did not accompany Movant to the interview on January 4. Wampler testified he advised Movant against participating in the interview, yet he drove Movant to the courthouse "to make sure he got to the right place." During this interview, Movant told the police officers that he accidentally shot his grandfather.

Wampler again met with Movant on January 6, 1993. Because Movant told a different story at that meeting, Wampler concluded that Movant was lying to him, or at least not being forthcoming with the truth. Wampler testified that the "stories got worse and worse.... You know, it started out being one shot and it was accidental, and on and on. Next thing it was two shots, and it was one of 'em at point blank range. Where did he get the rifle, and how much did he think about it...." At the end of the second meeting, Wampler concluded that Movant was at serious risk for being charged with murder. Wampler believed Movant could be "in a lot of trouble," as he had made several statements to the police that differed in substance, and that the "cops [are] smart enough they're going to keep coming at you and get to the bottom of it."

Following Wampler's second meeting with Movant, an interview was scheduled for January 7, 1993, for the purpose of making a fourth statement to the authorities. Wampler was present for most of the interview, but left before the conclusion. In this fourth statement to the authorities, Movant said he intentionally shot his grandfather.

For his first point, Movant alleges the motion court erred in denying the Rule 29.15 motion because Wampler rendered ineffective assistance of counsel by arranging for Movant to give statements to the authorities on January 4, and January 7, 1993, and that Wampler rendered ineffective assistance when he left the January 7 interview before the questioning was complete, which left movant "alone with his adversaries." Respondent asserts that

---

1. The eight-month delay in certification resulted from the request of Movant's attorneys to explore treatment alternatives available outside of the juvenile system of Missouri.

"counsel's performance was not deficient because the credible evidence showed that Appellant insisted on the interviews against counsel's advice and counsel left the last interview for strategic reasons."

■ Respondent also argues that Movant's Sixth Amendment right to counsel had not attached when the interviews occurred. The Sixth Amendment "right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant." *United States v. Gouveia,* 467 U.S. 180, 187, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). The accused has a right to have an attorney present during any interrogation occurring after that formal charging proceeding. *Moran v. Burbine,* 475 U.S. 412, 428, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).

■ Under the Fifth Amendment, however, an individual has the right to the presence of counsel during police interrogations. *See Miranda v. Arizona,* 384 U.S. 436, 444–45, 470, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444, 86 S.Ct. 1602. The *Miranda* safeguards apply whenever a person in custody is subjected to either express questioning or its functional equivalent. *Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The term interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. 1682.

Assuming, without deciding, that Movant had a Fifth Amendment right to counsel at the interviews, or interrogations, we do not believe the motion court erred in finding counsel was not ineffective.

■ To establish ineffective assistance of counsel, Movant must show both (1) that his attorney failed to conform his representation to the degree of skill, care and diligence of a reasonably competent attorney under similar circumstances; and, (2) that he was prejudiced as a result. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *rehrg. denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864; *Sidebottom v. State,* 781 S.W.2d 791, 795 (Mo.banc 1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990), *rehrg. denied,* 497 U.S. 1046, 111 S.Ct. 6, 111 L.Ed.2d 822 (1990). In proving his counsel's performance did not conform to this standard, Movant must rebut the strong presumption that counsel was competent. *Sidebottom,* 781 S.W.2d at 795–96. On appellate review, deference is given to the trial court's opportunity to judge the credibility of witnesses. *Buckle v. State,* 885 S.W.2d 37, 38 (Mo.App.1994).

■ There was testimony at the evidentiary hearing that Wampler advised Movant against making both the January 4th and the January 7th statements to the police. Wampler testified that he initially advised Movant not to go to the interview on January 4, but that it was "their call. If Jermaine wanted to go it was —— it would be his call; he's the client." Wampler testified that he did call to confirm the 1:30 appointment "as just a courtesy." On cross-examination, Wampler testified that he advised the Perrys to not feel pushed into having to make the 1:30 appointment with the juvenile officer. Wampler testified that he "warned them about the pitfalls of talking to the police," but the Perrys were "hell bent" on talking to the police and telling the truth.

Conversely, Eldo Rado Perry (Movant's adoptive father) testified that he had not scheduled the appointments, but that the decision was made by Wampler. He testified that Wampler did not advise them against it, and told them to return on January 7 for an appointment with juvenile authorities. Mary Perry (Movant's moth-

er) testified that going to the 1:30 p.m. appointment on January 4 was Wampler's idea and that he made the phone call to arrange it. She testified that she did not want Movant to make a statement. Movant testified that when he went to the January 4 interview, it was what his attorney wanted him to do, and that he did not want to go, nor did his parents want him to go to the interview. He testified that Wampler set up the interview, and made the decision for him to talk to the police on January 7. Movant also testified that Wampler told him it was best to make the statement, and that Wampler never said he was better off not talking to the police.

Wampler testified that he did not remember whether he scheduled the January 7th meeting, or if someone else did. Wampler did state that his "general thought" was that if Movant talked to the police, it might result in him remaining under the juvenile system, and not be certified as an adult. Wampler accompanied Movant to the January 7 statement.

Giving deference to the motion court's ability to judge the credibility of the witnesses, this court does not conclude that the court erred when finding this claim to be "without merit." There was evidence indicating that the attorney's performance was not deficient, as he testified that he advised Movant not to talk to the authorities, and Movant acted against that advice.

Movant's second allegation of ineffective assistance of counsel under this point is that Wampler abandoned Movant during the January 7 interview by leaving before the conclusions of the interview.

Wampler admitted that he left before the interview was completed, but that at the time he left, Movant had already detailed the events of the murder.

Movant has not shown how Wampler's leaving the interview rendered his performance ineffective. Wampler testified that he left "right at the end" and was there for "almost the whole statement," and that he was present when Movant was advised of his rights at the beginning of the interview. There is no indication in the transcript of the interview of the exact point at which counsel left the room, however, Wampler testified that when he left the interview, Movant had already "gone over the crime in great detail." Wampler explained that, in his opinion, it was a "good move" because he had a "fetching young client, who's had a very troubled family," and thought it was a good idea for the police and juvenile authorities to "get to know him."

It is not ineffective assistance of counsel to make a reasonable strategy decision. *Sams v. State*, 980 S.W.2d 294, 296 (Mo.banc 1998). The motion court did not clearly err in determining that Mr. Wampler's absence at the conclusion of the interview was not ineffective. Wampler's decision to leave might have been a questionable strategy, but no prejudice due to his leaving was established. Point I is denied.[2]

The second point relied on alleges the motion court erred in denying the motion because counsel was ineffective, in that he failed to disclose a conflict of inter-

---

2. In its conclusions, the motion court stated: "It is inconceivable that Movant's January 7th statement to police, in any way affected the outcome of this case. Once Movant decided to ignore Mr. Wampler's recommendation to avoid the January 4th interview, the January 7th interview did not injure Movant's hopeless position to any degree." It was not until the January 7th interview that Movant actually confessed to the murder and described how he shot his grandfather and other details of that day. Therefore, Movant's statement on January 7th could have affected the outcome of this case. However, Movant does not allege in his point that the motion court erred in finding that the January 7th statement did not affect the outcome of this case. Movant's position on this finding only appears in the argument portion of his brief. A question not presented in the point relied on will not be considered. *Schmidt v. Warner*, 955 S.W.2d 577, 583–84 (Mo.App.1997). Issues to which an appellant alludes only in the argument portion of his brief are not presented for review. *Id.*

est between his client's interests and the client's mother's desire to resolve the murder of her father.

Movant states that "an obvious conflict of interest existed between Jeremaine and his mother," since Jeremaine was the prime suspect and Mary Perry told Wampler she wanted to "get to the bottom" of her father's death. The motion court found no conflict of interest:

> [Movant's] claim that Mr. Wampler was representing Eldo and Mary Perry is contradicted by Mary Perry's own sworn testimony in the post conviction relief hearing. She testified that she gave Mr. Wampler a check for the purpose of hiring Mr. Wampler to represent her son, the [movant].

■ Mrs. Perry also testified: "I paid Dee Wampler to protect my son legally as a defense criminal attorney." Mrs. Perry also testified that one of the reasons she fired Wampler was because he would not discuss Movant's confidential statements with her. Mrs. Perry also testified that she was displeased with Wampler because "there was no group action as to what to do with [her] son." During the interview with Wampler on January 6, Mrs. Perry testified that Wampler separated her and her husband from her son, and that Wampler spent a couple hours alone with Jeremaine. The fact that she was not consulted regarding decisions of Movant's defense is evidence that Wampler did not believe he was representing anyone other than Movant. In order to prevail on an ineffective assistance of counsel argument based on a conflict of interest, "a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). We do not find that the motion court clearly erred in concluding that Wampler rep-

resented the interests of Movant, and not those of Mrs. Perry. Point II is denied.

■ Movant's third point alleges error in denying the Rule 29.15 motion "in that Appellant's counsel disclosed confidential attorney-client communications to the prosecutor." Movant alleges that after Wampler was discharged as his attorney, but prior to trial, "Wampler agreed to meet with the Special Prosecutors; ... During the interview Wampler disclosed attorney-client communications...." After a thorough discussion of the law on the attorney-client privilege, Movant again states that "Mr. Wampler's disclosure of privileged communications to the Special Prosecutor violated" protected communications, the ethical rules, and fell below the standard of a reasonably competent attorney. Movant asserts that Wampler told the Special Prosecutors that Jeremaine told him he had shot his grandfather in the head twice. Movant does not cite any testimony or evidence of the alleged disclosure. The information Wampler allegedly gave to the Special Prosecutors is information Movant himself provided in his statement to the police and juvenile authorities on January 7.[3]

At the evidentiary hearing on this motion, Wampler testified that he did not believe that he told the prosecutors anything that occurred during conversations he had with Movant and his parents, and that the prosecutors specifically told him that they did not want to know what he had discussed with Movant when he and Movant were alone.

The motion court concluded that "[t]here exists no evidence in the record that Dee Wampler revealed confidential statements made to him by [Movant]. All statements made by Wampler to the special prosecu-

---

**3.** In the direct appeal, this court noted that Mr. Wampler did not testify during the trial. A hearing was held in chambers, during which the special prosecutors stated that they would not call Wampler to the witness stand. "Therefore, any privileged or work-product

communications between Defendant and Mr. Wampler, as expressed from the witness stand by Mr. Wampler, were never placed before the jury, and thus had no impact on its verdict." *State v. Perry,* 954 S.W.2d at 560.

tor were, according to Wampler's uncontradicted testimony, statements made by [Movant] in the presence of third parties, and therefore not confidential."

We agree that such a meeting is unusual, if not improper, a question here not decided. However, Movant failed to meet his burden of showing that Wampler revealed privileged communications, and thus Movant cannot show that counsel's performance was deficient or prejudiced him. Point III is denied.

■ Movant's fourth, and final, point alleges ineffective assistance of counsel at the juvenile hearing to certify Movant as an adult. The alleged ineffectiveness is based upon failure to submit evidence that Movant could be accepted into a private treatment program at the treatment facility known as Ozanam Home, and based upon a failure to advise the court of the possibility of retaining jurisdiction over a minor until age twenty-one. Specifically, Movant argues that counsel failed to introduce into evidence a letter from Ozanam Home to Judge McGuire that described Movant's evaluation, and indicated that he would be accepted and receive appropriate treatment at the facility.[4]

On this issue, the motion court concluded: "Considering the viciousness· of this homicide, the failure on the part of defense counsel to include the report of the Ozanam home to accept Movant for treatment as part of the juvenile court record does not rise to the level of ineffective assistance of counsel that would have affected the outcome of this case."

■ "Trial judges are presumed to know the law and to apply it in making their decisions." *State v. Feltrop*, 803 S.W.2d 1, 15 (Mo.banc 1991), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081, *citing Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), *rehrg. denied*, 497 U.S. 1050, 111

S.Ct. 14, 111 L.Ed.2d 828. Movant has presented no evidence to rebut the presumption that Judge McGuire was aware of Section 211.231, which allows the court to maintain jurisdiction over Movant until he was twenty-one years old. Movant merely asserts that "counsel did not argue to the juvenile court that it could retain jurisdiction over Jermaine until he was twenty-one . . . ." Movant acknowledges that this statute has been in effect since 1957, which in this court's opinion, increases the likelihood that Judge McGuire was aware of the statute.

As stated above, in order to prevail on a claim of ineffective assistance of counsel, an appellant must show not only that his attorney failed to perform at the level of a reasonably competent attorney, but must also show that he was prejudiced as a result of such failure. *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. 2052. Failure to introduce the letter does not appear to have prejudiced the Movant because there was an abundance of evidence before the court when it made its ruling to certify Movant to stand trial as an adult. The court heard evidence regarding Ozanam Home and the possible treatment Movant could receive. Doctor Whipple, the psychologist appointed by the court, and Dr. Logan, the psychiatrist hired by the Movant's family, agreed that Movant would benefit from treatment for his emotional problems, that he would probably need no more than several years of that treatment, and that they believed that Movant was not a threat to society. Dr. Logan stated that he had investigated Ozanam Home, that it was a residential treatment facility for teenagers who had emotion problems, and that he had sent his evaluation of Movant to Ozanam Home.

■ Dr. Logan also testified that Ozanam's admissions committee had reviewed the evaluation and indicated that nothing

4. Ozanam Home apparently sent the letter directly to Judge McGuire. McGuire testified in a deposition that he would not have read

the letter since it would have been an *ex parte* communication.

would preclude Movant's admission to their program, pending an "in person evaluation." Dr. Logan also mentioned that Ozanam could maintain treatment of Movant until age twenty-one if needed. Judge McGuire asked Dr. Logan where he thought Movant should be, and Dr. Logan stated that Ozanam would be the best place for Movant and for "society down the line," and that it could make the "family functional and [the Movant] a productive citizen." The court obviously had information before it regarding Movant's possible treatment at Ozanam Home.[5]

This court also notes that in the direct appeal of this conviction, the juvenile court made specific findings regarding statutory factors to be considered by a juvenile court in determining whether a child is a proper candidate for adjudication within the juvenile court system. Section 211.071. *State v. Perry*, 954 S.W.2d at 567. The listing of conclusions by the juvenile court is further indication that a failure to submit the letter did not result in any prejudice to Movant. Point IV is denied.

The judgment is affirmed.

BARNEY, J., concurs.

GARRISON, P.J. concurs in separate opinion.

PHILLIP R. GARRISON, Chief Judge, concurring.

I concur with the result reached in the principal opinion, but write separately to express some of my reasons for doing so. As noted in the principal opinion, a movant is required to show both deficient performance and prejudice to be entitled to relief under a claim for ineffective assistance of counsel. Courts are not required to consider both prongs of the test; if a movant fails to satisfy one of them, the court need

not consider the other. *State v. Clements*, 849 S.W.2d 640, 646 (Mo.App. S.D.1993). Such a claim may be denied if there is no showing of prejudice. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

In his first point of error, Movant alleges that Mr. Wampler was ineffective by arranging the January 4, 1993 and January 7, 1993, interviews, and by leaving the latter interview before its conclusion. As I understand the record, Movant had met with authorities twice prior to Mr. Wampler being retained to represent him. In the first interview, on January 2, 1993 (the day of the murder), Movant told the police that he had found his grandfather lying in a pool of blood upon his return to the home. He specifically denied involvement in the death. The next day, he gave another statement in which he related factual statements which were inconsistent with facts otherwise learned by the police. Apparently after the second statement, Movant admitted to his uncle, a detective with the Oklahoma City Police Department, that he had accidentally killed his grandfather. Thereafter, Movant, with his parents, went to Mr. Wampler's office and retained him to represent Movant. Movant then told Attorney Wampler that he had accidentally killed his grandfather, a story which he then told authorities in the statement on January 4, 1993. Movant knew, at that time, that he had shot his grandfather twice in the head, once from the back and once in the forehead at close range. Mr. Wampler, however, was not apparently aware of these facts at that point. Nevertheless, the motion court found that Mr. Wampler did advise against the January 4, 1993 interview. The record here indicates that prior to that interview, Movant's uncle had already informed the

5. This testimony was presented at the juvenile hearing, a transcript of which is not before this court. Both parties, however, seem to agree as to the substance of the testimony. In movant's brief, Dr. Whipple is described as a "psychologist." Respondent calls him a "psychiatrist." This does not appear to be signifi-

cant. "Where a statement of fact in one party's brief is conceded to be true in the adversary's brief, this court may consider it as though it appears in the record." *In re Marriage of Balough*, 983 S.W.2d 618, 620 n. 3 (Mo.App.1999).

863

police that Movant had admitted accidentally shooting his grandfather. The police, therefore, were already in possession of that information prior to that interview.

It was not until January 6, 1993, that Movant informed Mr. Wampler that he had, in fact, intentionally shot his grandfather. At that point in time, the authorities were in possession of, or would shortly come into possession of, information indicating that the shooting had not been accidental. Included in this information was the autopsy report revealing that his grandfather had been shot twice in the head, from different directions. The motion court concluded that Mr. Wampler's strategy, after learning the truth, was to try to convince the authorities to leave Movant in the juvenile justice system rather than certifying him for trial as an adult.

In my view, the motion court correctly concluded that once Movant made the January 4, 1993, statement to authorities claiming that he had accidentally killed his grandfather, his legal position was indefensible. The motion court concluded that this statement was against the advice of Mr. Wampler, but was also given at a time when the authorities had already been informed that Movant had at least admitted an accidental shooting. The motion court also noted that the physical facts were inconsistent with an accidental shooting, and that once Movant admitted to the authorities that he was the force behind the killing, his factual defense was impossible. Accordingly, the motion court concluded that the January 7, 1993, statement to police did not affect the outcome of this case. I agree with these conclusions and concur as to this point for the reason that no prejudice has been demonstrated.

I also write separately concerning the contention that the motion court erred in denying relief because Mr. Wampler disclosed confidential attorney-client communications to the prosecutors. In my view, the compelling response to this point also has to do with the lack of prejudice in that the prosecutors already had in their possession all of the information which Mr. Wampler could have revealed. I do not intend to minimize or indicate approval of the meeting itself. I simply do not believe that prejudice has been demonstrated in the context of entitlement to relief under Rule 29.15.

I concur with the result reached in the principal opinion.